[No. 40687-6-I.   Division One.   November 30, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. MARIO CHANNEL JONES, *Appellant*.

168

*Stacey L. Bennetts*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Terence Scanlan, Deputy*, for respondent.

COLEMAN, J. — Mario Channel Jones appeals his conviction for delivery of cocaine, arguing that the trial court erred in denying Jones's motion to sever after erroneously admitting evidence of his co-defendant's prior arrests and

by admitting Jones's unemployment records to support an inference that he derived income from selling drugs. He also alleges that there was insufficient evidence to support his conviction. We affirm.

## FACTS

On February 5, 1996, at approximately 4 P.M., Seattle Police Officer Melvin Britt, positioned on the top floor of the Senior Center at the intersection of Rainier Avenue and Holly Street, observed Robert Stubblefield stopped at a traffic light, flashing his lights and honking his horn. Officer Britt watched Stubblefield proceed through the traffic light, pull up behind a parked Jeep, and walk over to the driver's window of the Jeep to speak with its driver, George Williams. Stubblefield talked with Williams for about 30 seconds and then walked to a phone booth to make a brief call. Less than a minute later, Jones came running out of the nearby Arches Apartments and joined Stubblefield at the bus shelter at the intersection of Rainier and Holly. Jones removed a plastic-wrapped package from his pocket and then took something smaller from the plastic wrapping. Stubblefield gave what looked like cash to Jones, and Jones handed the small object to Stubblefield. After this transaction, which lasted 30 to 40 seconds, Jones ran back to the Arches Apartments. Concluding that a drug transaction had taken place, Britt called for assistance and left the Senior Center.

Stubblefield returned to the Jeep, and according to Williams's testimony, handed rock cocaine to Tiffany Booker, Williams's passenger, and cash to Williams. Britt, meanwhile, approached the Jeep and saw Stubblefield standing outside the open door of the Jeep. He also observed what appeared to be rock cocaine and cash inside the vehicle between the driver's seat and the edge of the driver's doorway. A five-dollar bill was lying on the ground and Williams had $45 in his hand. After other officers arrived, Stubblefield, Williams, and Booker were arrested, and Britt, along with Officer Bruce Creamer, went to the Arches Apartments and

located Jones, who was visiting a friend. Jones explained that Stubblefield was his car mechanic and he had met Stubblefield to give him money for work he had done. Jones had $442 in cash in his pocket.

At trial, Stubblefield testified that he was doing mechanical work on Jones's car that day, and that when he saw Williams, he was on his way to the auto parts store. Because he had not seen Williams for two years, when he saw his Jeep, he tried to get his attention by honking his horn and flashing his lights. Stubblefield said that he interrupted his conversation with Williams because he needed to call Jones to get some cash to buy cigarettes and beer. Stubblefield said Jones gave him five dollars, and when he returned to the Jeep, he put his hand inside solely for the purpose of shaking Williams's hand.

The trial court permitted the State to question Stubblefield about his prior convictions for drug transactions in this same location, reasoning that Stubblefield had opened the door to questioning about his criminal past by explaining in detail the purpose for his presence at that location. The trial court also admitted records from the Department of Employment Security which documented Jones's earnings and indicated that he did not apply for unemployment compensation from January 1, 1995, to January 9, 1997. Jones objected to the admission of both the prior convictions and the employment records and moved for severance of the trials, claiming that he was prejudiced by the evidence offered against Stubblefield. At the conclusion of the trial, the jury found both Stubblefield and Jones guilty of Violation of the Uniform Controlled Substances Act (VUCSA), delivery of cocaine, within 1,000 feet of school grounds.[1]

## DISCUSSION

1. Severance

Jones first argues that the trial court should have

[1] RCW 60.50.401(a)(1)(i).

granted discretionary severance because the admission of highly prejudicial character evidence against Stubblefield impugned Jones's credibility as well.[2] Denial of a severance motion is entrusted to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion.[3] On appeal from denial of a motion for severance, the defendant has the burden of demonstrating that a joint trial was so manifestly prejudicial as to outweigh the concern for judicial economy.[4] To meet this burden, the defendant must show specific prejudice.[5] We infer specific prejudice from the following:

> "(1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive; (2) a massive and complex quantity of evidence making it almost impossible for the jury to separate evidence as it related to each defendant when determining each defendant's innocence or guilt; (3) a co-defendant's statement inculpating the moving defendant;

---

[2]The State argues, relying solely on CrR 4.4(a)(2), that Jones did not preserve the severance issue for appeal because he failed to renew his motion at the conclusion of all the evidence presented at trial. This argument confuses the distinction between pretrial severance motions and severance motions made during trial. The provisions of the rule do not apply in this case because Jones's original motion to sever was made in the course of the trial, not during pretrial proceedings. On the facts presented, Jones properly preserved the issue for appellate review. RAP 2.5. *See* CrR 4.4(a)(2) ("If a defendant's *pretrial* motion for severance was overruled he may renew the motion on the same ground before or at the close of all the evidence. Severance is waived by failure to renew the motion.") (Emphasis added.)

[3]*State v. Alsup*, 75 Wn. App. 128, 131, 876 P.2d 935 (1994); CrR 4.4(c)(2). Separate trials are not favored in Washington. *State v. Dent*, 123 Wn.2d 467, 869 P.2d 392 (1994); *State v. Campbell*, 78 Wn. App 813, 819, 901 P.2d 1050, *review denied*, 128 Wn.2d 1004, 907 P.2d 296 (1995).

[4]*State v. Hoffman*, 116 Wn.2d 51, 74, 804 P.2d 577 (1991); *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990); CrR 4.4(c)(2) (discretionary severance is appropriate when "necessary to achieve a fair determination of the guilt or innocence of a defendant"); *see also State v. Grisby*, 97 Wn.2d 493, 506-08, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983).

[5]*Grisby*, 97 Wn.2d at 507.

(4) or gross disparity in the weight of the evidence against the defendants."[6]

Jones argues that he was directly implicated by Stubblefield's admission on cross-examination that he had committed two previous drug offenses in the same location as the offense currently charged,[7] and that the strength of the case against Stubblefield colored the jury's fair determination of Jones's guilt.[8] In response to Jones's severance request, the trial court stated:

Based on the information I have received unless there is something about these priors that I don't know it would appear that the prejudice, if there is any, would flow to Mr. Stubblefield. I have no indication and I don't have any knowledge as to whether any of these prior incidents allegedly involved Mr. Jones or the apartment in which Mr. Jones was visiting at the time. So I think prejudice that would flow would be solely to Mr. Stubblefield.

Without reaching the question of whether evidence of Stubblefield's prior convictions was properly admitted, we agree with the trial court that this evidence did not directly implicate Jones in the crime charged, and therefore did not result in "powerful incrimination"[9] requiring separate trials.

## 2. Admission of Employment Records

Jones next contends that the trial court abused its discre-

---

[6]*State v. Canedo-Astorga*, 79 Wn. App. 518, 528, 903 P.2d 500 (1995) (quoting *United States v. Oglesby*, 764 F.2d 1273, 1276 (7th Cir. 1985)), *review denied*, 128 Wn.2d 1025 (1996).

[7]As permitted by RAP 10.1(g), Jones has adopted by reference the arguments set forth in Stubblefield's appellate brief. Stubblefield's appeal was dismissed due to his failure to submit to the jurisdiction of this court.

[8]The State argues that appellate review of this argument—that the vast majority of evidence presented at trial focused on Stubblefield—is precluded because Jones failed to assert this reasoning for severance at trial. We conclude that this issue is subsumed within Jones's assertion at trial that severance should be granted because of the prejudice which would result from a joint trial.

[9]*State v. Dent* sets forth powerful incrimination as the appropriate severance standard. 123 Wn.2d at 486.

tion in denying his motion to exclude irrelevant and prejudicial documents from the Department of Employment Security which indicated that he had no reported income and that he did not apply for unemployment compensation from January 1, 1995, to January 9, 1997. The State argued at trial that the jury could use this evidence "to infer that this person did do this particular deal because this is how he makes his living is he sells drugs." The trial court agreed to admit the records, reasoning:

> The admission of financial records to show motive for theft or for the gain of money, though it is not an element of a charged offense, may be admissible if the state's theory of the case supports such a finding by the court. . . . The evidence is not admissible for purposes of showing that poor people are more likely or necessarily are more likely to sell drugs than other people who have more substantial income. . . . But I do believe that the evidence is probative. I don't think it has the same stigma or attachment to it or makes the same inference that all people who are unemployed are going to be out there committing crimes. I don't think that that is the inference that the state would be allowed to argue or could draw from this information. We are talking about a person who is unemployed, who has money, not a person who is simply unemployed or not working, but a person who is unemployed who has a large amount of cash in his pocket and is accused of a crime for which profit is certainly a motive for a commission of such an act.

Despite the trial court's explanation, Jones alleges that by admitting this evidence, the trial court created the impermissible inference that poverty leads to crime. The State counters that this evidence is both relevant and substantially probative.

■■ Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.[10] "In determining relevance, (1) the purpose for which the evidence is offered

---

[10]ER 401.

must be of consequence to the outcome of the action and (2) the evidence must tend to make the existence of the identified fact more probable."[11] Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ."[12] We review a trial court's evaluation of relevance under ER 401 and its balancing of probative value against its prejudicial effect or potential to mislead under ER 403 with a great deal of deference, using a "manifest abuse of discretion" standard of review.[13]

The trial court relied on *State v. Matthews* in deciding this issue.[14] In that case, evidence of the defendant's dire financial situation, along with evidence that the defendant and his wife were living beyond their means, was admitted to support the State's theory that the defendant's financial woes motivated him to commit a robbery which ended in murder. The court admitted this evidence because Matthews' identity was disputed, and because the State's theory of the case—that the murder was the result of an interrupted robbery by a financially pressured man—depended on its admission. In this situation, the court explained, "whether the accused person had any motive for robbery becomes a relevant subject for inquiry; if not, the likelihood of that person being the assailant is rationally reduced."[15] The court warned, however, that "this type of evidence should be admitted with caution"[16] and stressed its recognition that "poor people are not more likely to steal than are people of higher income levels."[17] In upholding the admissibility of the evidence, the court observed

---

[11]*State v. Suttle*, 61 Wn. App. 703, 710-11, 812 P.2d 119 (1991).

[12]*State v. Rice*, 48 Wn. App. 7, 13, 737 P.2d 726 (1987); *See* ER 403.

[13]*State v. Luvene*, 127 Wn.2d 690, 707, 903 P.2d 960 (1995) (quoting *State v. Russell*, 125 Wn.2d 24, 78, 882 P.2d 747 (1994)).

[14]75 Wn. App. 278, 877 P.2d 252 (1994), *review denied*, 125 Wn.2d 1022(1995).

[15]*Id.* at 284.

[16]*Id.* at 286.

[17]*Id.*

that inquiry into a defendant's financial status may be useful when considered in conjunction with other probative evidence.[18]

■ Although *Matthews* was appropriately resolved on its facts, we do not advocate a wholesale adoption of the *Matthews'* reasoning in every case where a defendant's financial motivation might be relevant. In crimes where acquisition of money is a primary motive, such as drug dealing, the State could always craft a theory that financial hardship led to the defendant's commission of the crime. It would follow that evidence of a defendant's financial status would be routinely admitted, and the jury would be invited to infer, solely on the basis of a defendant's income, that he or she is more or less likely to have committed a financially-motivated offense. This inference is impermissible. That is not to say, however, that financial status evidence is per se inadmissible.

The State offered evidence of the $422 Jones possessed immediately after commission of the alleged crime to show that Jones likely obtained this money by dealing cocaine. The relevance and probative value of this large sum of money after an alleged drug deal is undisputed. To rebut Jones's likely argument that he acquired this money from a lawful source, the State sought to present evidence that Jones had no apparent source of lawful income. We conclude that the State was entitled to anticipate Jones's defenses in this manner. The evidence was not intended to establish that Jones was a drug dealer simply because he had no reported income; rather, the financial reports became relevant when the State presented evidence of money found on Jones's person during his arrest and inquired about its source. Jones could have refuted any negative inference arising from this evidence by pointing to a verifiable source of this income, but he failed to do so

---

[18]*See State v. Armstrong*, 170 Mont. 256, 552 P.2d 616 (1976) (in a homicide and robbery prosecution, the court admitted evidence showing that Armstrong had recently been fired, had told others he had no money, had written checks with insufficient funds, and had gambled on the night of the robbery and murder, to provide an inference for motive of the crime).

persuasively.[19] It should be noted that if Jones had been found with no money after the alleged offense, or with an insignificant sum, the admission of evidence of Jones's financial situation would have been error. In this case, the trial court engaged in proper balancing and concluded that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion.[20]

## 3. Sufficiency of the Evidence

■ ■ Finally, Jones contends that there was insufficient evidence to support his conviction. Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[21] Circumstantial evidence and direct evidence are equally reliable.[22] In determining whether the requisite quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case.[23] The prosecution was required to prove that Jones, in complicity with Stubblefield, knowingly delivered

---

[19]During cross-examination, the State questioned Jones at length about his recent sources of income, his living arrangements, and the cars he has owned. Jones referred to working at two Burger King restaurants and to doing several odd jobs for friends and acquaintances, but he largely failed to substantiate his claims with names, locations, or details.

[20]We stress, however, that any inquiry into a criminal defendant's financial situation should be undertaken with extreme care. Even when this exploration is warranted, the prosecution must "proceed gingerly in its exploration." *Matthews*, 75 Wn. App. at 286 (citing *Davis v. United States*, 409 F.2d 453, 458 (D.C. Cir. 1969)). The evidence should be sufficiently limited to its purpose so that any stigma of bankruptcy or poverty is not made a point of primary focus for the jury. Jones complains that he was "endlessly drilled" by the prosecution about the employment documents and his financial situation. While we recognize that the prosecutor came dangerously close to placing undue weight on Jones's unemployment, we do not think he crossed the line in this case.

[21]*State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[22]*State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[23]*State v. Galisia*, 63 Wn. App. 833, 838, 822 P.2d 303, *review denied*, 119 Wn.2d 1003, 832 P.2d 487 (1992).

cocaine to Williams or Booker[24] within 1,000 feet of the perimeter of Brighton Elementary School.[25]

Officer Britt observed Stubblefield flag down the Jeep and talk briefly with its occupants, Williams and Booker. Williams testified that he saw and heard Booker ask Stubblefield for cocaine. Stubblefield immediately left the Jeep and called Jones, who appeared in less than a minute. Jones gave Stubblefield a small plastic-wrapped object in exchange for what appeared to be money, and Stubblefield returned to the Jeep. Stubblefield then handed pieces of rock cocaine to Booker and cash to Williams. Britt detained Williams, Stubblefield, and Booker, and recovered several pieces of rock cocaine. Britt and Officer Creamer found Jones nearby, with over $400 in cash. Viewing the evidence in the light most favorable to the prosecution, we conclude the State presented sufficient evidence for a rational jury to find Jones guilty of the crime charged.

Affirmed.

WEBSTER and BECKER, JJ., concur.

Reconsideration denied January 15, 1999.

Review denied at 138 Wn.2d 1003 (1999).

---

[24]RCW 69.50.401(a)(1)(i).

[25]RCW 69.50.435(a).