FILED
COURT OF APPEALS
DIVISION II

2013 JUL -2 AM 9: 07

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JAMC,<br><br>Appellant. | No. 42946-2-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, C.J. — JAMC[1] appeals the juvenile court's adjudication and disposition on the charge of delivery of a controlled substance (marijuana).[2] He argues that the trial court's determination that the pipe found on JAMC was "indicative of regular marijuana use" is unsupported by substantial evidence, and that the trial court's oral opinion shows that the court used extrinsic evidence in finding him guilty. Because the non-challenged findings adequately support the conclusion that JAMC was guilty of delivery and JAMC's other arguments are based on unincorporated and non-binding statements from the trial court's oral ruling, we affirm.

---

[1] In order to protect the privacy interests of the appellant, we change the title of the case to the juvenile's initials. RAP 3.4. The full names of the juveniles involved in the case will not be used.

[2] JAMC was also adjudicated guilty of possession of drug paraphernalia. He does not appeal that adjudication.

No. 42946-2-II

## FACTS

According to the trial court's findings of fact, JAMC was a student at Skyview High School in Vancouver, Washington.[3] On October 12, 2011, JAMC asked a classmate, LF, if he wanted to buy some marijuana. During lunch hour, JAMC and LF left campus. While off campus, LF gave JAMC ten dollars (consisting of three one-dollar bills and twenty-eight quarters) in exchange for a substance in a container. JAMC indicated the substance was marijuana. LF put the container in his backpack and JAMC put the money in his backpack. They returned to school.

Later that same day, LF was removed from class and searched by school officials. LF gave the container he received from JAMC to school officials and told them he bought it from JAMC. Police later tested the substance in the container and found that it contained marijuana.

JAMC was called to the assistant principal's office and searched. In JAMC's backpack, school officials found a pipe along with three one-dollar bills and several quarters. JAMC admitted that he used the pipe to smoke marijuana that morning. He further admitted to leaving campus with LF, but denied selling marijuana.

JAMC, who was under the age of 18, was charged for delivery of a controlled substance and unlawful use of drug paraphernalia. Former RCW 69.50.401(1), (2)(c) (2011); former RCW 69.50.412(1) (2011). JAMC was tried before the bench in juvenile court on December 7, 2011, and adjudicated guilty as charged. He appeals.

---

[3] JAMC does not assign error to any of the findings of fact. Thus they are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

2

No. 42946-2-II

## ANALYSIS

JAMC challenges his adjudication for delivery of a controlled substance. He assigns error only to one factual statement within conclusion of law 3. This conclusion of law states that the pipe possessed by JAMC was indicative of regular marijuana use:

> The pipe in the respondent's possession is drug paraphernalia which contained marijuana residue, and is indicative of regular marijuana use. The respondent used the pipe to ingest or inhale or otherwise introduce marijuana, a controlled substance, into his body the morning of October 12, 2011.

Clerk's Papers (CP) at 11. JAMC contends that the trial court's determination that the pipe "is indicative of regular marijuana use" is unsupported by substantial evidence[4] and that the trial court relied on extrinsic evidence in reaching its verdict. CP at 12.

Challenged findings of fact are reviewed for substantial evidence. *See State v. Hill*, 123 Wn.2d 641, 644, 807 P.2d 313 (1994). Substantial evidence exists where there is a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the finding. *Hill*, 123 Wn.2d at 644. This court reviews de novo the trial court's conclusions of law to determine if they are supported by the findings of fact. *Bingham v. Lechner*, 111 Wn. App. 118, 127, 45 P.3d 562 (2002).

The State concedes that this finding is unsupported. We accept this concession because no witness testified that JAMC's possession of the pipe indicated that he was a regular user of marijuana. But the State argues that this finding is superfluous and that the court's conclusion that JAMC was guilty of delivery should stand. We agree with the State.

---

[4] Both JAMC and the State agree that this is a factual finding, not a conclusion of law. We agree and review it as a finding of fact. *Valentine v. Dep't of Licensing*, 77 Wn. App. 838, 846, 894 P.2d 1352 (1995) (a finding of fact incorrectly denominated as a conclusion of law is reviewed as a finding).

3

The other unchallenged findings adequately support the trial court's conclusion that JAMC was guilty of delivery. JAMC admitted to using the pipe to smoke marijuana. LF testified that JAMC sold marijuana to him. The container with marijuana was found on LF after he left campus with JAMC during lunch. And while JAMC did not have as many quarters as LF said he gave JAMC, three one-dollar bills and several quarters were found in JAMC's backpack. Even with the elimination of the challenged finding, the trial court's conclusion on guilt is amply supported by the unchallenged findings.

Relying largely on the trial court's oral ruling, JAMC argues that the challenged finding and the trial court's adjudication are based on impermissible extrinsic evidence. "Novel or extrinsic evidence is defined as information that is outside all the evidence admitted at trial." *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 270, 796 P.2d 737 (1990). "Such evidence is improper because it is not subject to objection, cross examination, explanation or rebuttal." *State v. Balisok*, 123 Wn.2d 114, 118, 866 P.2d 631 (1994). In its oral ruling, the court discussed the pipe found on JAMC, which had been admitted into evidence. Noting his own personal experiences, the trial judge reasoned that because the pipe JAMC used to smoke marijuana was very clean, JAMC was a regular user of marijuana, and that when all the evidence was combined, JAMC was guilty of delivery:

> The thing that pushes me over the edge on delivery is right here, this pipe. What this pipe tells me—and I'll just preface it by saying, I went to college in the '60s so I have personal experience with this, and then 30 years in the legal field, both as a prosecutor, defender, assistant attorney general, district court judge, superior court judge, I've seen these things a long time.
> The one thing that jumps out at me from this pipe, young man, is that you are a regular user of marijuana. Not occasional, regular user of marijuana. How do I know that? Just look at the pipe. It shows that when you ran out of money for more marijuana, you were scraping the residue inside the pipe and inside the bowl 'cause they're both very clean so that you could get that extra high. Okay?

Now, when you put all that together, it all says he's guilty of delivery. But the pipe is the cincher. So with that, I'm finding him guilty.

Report of Proceedings (RP) at 99-100. Based on these statements, JAMC argues the judge improperly used his own personal specialized experiences, rather than evidence, in making the challenged finding and adjudicating him guilty. He argues the court's action is analogous to juror misconduct cases where extrinsic evidence was introduced into deliberation. *See e.g., State v. Briggs*, 55 Wn. App. 44, 54-57, 776 P.2d 1347 (1989) (misconduct where juror related during deliberations his personal experience that a speech impediment could be controlled).

JAMC's reliance on the trial court's oral ruling is misplaced. While the trial court emphasized the pipe in its oral ruling, the written findings of fact and conclusions of law are controlling. "A trial court's oral opinion and memorandum opinion are no more than oral expressions of the court's informal opinion at the time rendered." *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998). An oral opinion is not final and is not binding unless formally incorporated into the findings, conclusions, and judgment. *Head*, 136 Wn.2d at 622. "[A] trial court may change its mind after delivering an oral or written opinion and before making its findings and conclusions." *Liming v. Teel*, 46 Wn.2d 762, 766, 284 P.2d 1110 (1955). While statements may be used to interpret the court's findings, they cannot be used to impeach the findings and they do not constitute proper grounds for assignments of error. *Sweeten v. Kauzlarich*, 38 Wn. App. 163, 169, 684 P.2d 789 (1984).

The trial court's oral remarks were not incorporated into the written findings or conclusions. There is no finding or conclusion saying "the pipe is the cincher." *See* CP at 10-12; RP at 100. If JAMC believed that the trial court's unincorporated statements were essential to the trial court's decision, he should have asked that they be incorporated into the findings of fact

5

and conclusions of law. JAMC did not. Because these statements were not part of the trial court's binding decision, it cannot be fairly concluded that the trial judge relied on his own personal experiences in adjudicating JAMC guilty. And unlike the juror misconduct cases cited by JAMC where jurors discuss their reasoning behind closed doors, JAMC had an opportunity to object to the reasoning stated by the trial court in its oral ruling. He did not. As to the flawed finding that the pipe was indicative of marijuana use (the only finding that was arguably tainted by extrinsic evidence), we agree with the State that this finding is superfluous. After this finding is excised, whether for lack of substantial evidence or for extrinsic evidence, the remaining findings, unchallenged by JAMC, adequately support the conclusion that JAMC was guilty of delivery.

Finally, JAMC argues that the trial court used his indigency to infer that he was likely to sell drugs. This argument is based on the trial court's oral remark that JAMC "ran out of money for more marijuana." RP at 100. This statement was also not incorporated into the trial court's written ruling and we accordingly disregard it. Regardless, JAMC's argument fails. In general, an inference that a person is likely to sell drugs because the person is poor is impermissible. *See State v. Jones*, 93 Wn. App. 166, 175, 968 P.2d 888 (1998) (inviting jury to infer, solely on the basis of a defendant's income, that he or she is more or less likely to have committed a financially-motivated offense, such as drug dealing, is impermissible). But the trial court's statements do not show that the court reasoned that poor people are more likely to sell drugs. Rather, the court was asserting that the pipe was clean because JAMC had likely scraped marijuana off the pipe to get high. And that he may have done so because he did not have

6

No. 42946-2-II

money to buy more marijuana. These comments do not show that the Court was finding JAMC guilty because JAMC lacked money.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Johanson, J.

_____
Tollefson, J.P.T.

7