# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70812-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MAHAMUD M. HARO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 10, 2014 |

SPEARMAN, C.J. — Mahamud Haro was convicted of one count of forgery for knowingly depositing a falsified check. On appeal he claims that the trial court erred by admitting evidence of his bank statements and allowing the State to argue that his poverty was evidence of his guilt. We conclude that the trial court acted within its discretion when admitting the statements, and correctly instructed the jury to disregard the prosecutor's comments. Finding no error, we affirm.

## FACTS

Mahamud Haro deposited a check into his Bank of America checking account on August 29, 2011, using an automated teller machine (ATM) located at the Westwood Village branch. The check was made payable to Haro for $4,768.25 and drawn from an account belonging to Thuy Nguyen. A photograph

of the transaction was captured on the ATM's camera. Haro immediately withdrew $200 from his account after the check had been deposited.

Nguyen formerly lived at 11635 First Avenue South in 2011, in the same building that Haro listed as his address on the bank account. The residence, part of the Arbor Heights Apartments in Seattle, is less than a ten-minute drive from the Westwood Village ATM. Nguyen had previously ordered new checks from Bank of America in 2011, but she never received them. Nguyen testified that she did not know Haro, did not recognize him in court, nor did she ever write a check for $4,768.25 to Haro or anyone else. Nguyen also testified that neither the handwriting nor the signature on the check were hers.

Detective Laura Alspach of the King County Sheriff's Office investigated the matter and received a copy of the check from Bank of America. On October 11, 2011, Detective Alspach went to 11635 First Avenue South, Unit D 106, to contact Haro. After knocking on the door and receiving no answer, she left a business card with a handwritten note stating: "Mahamud Haro, please call." Verbatim Report of Proceedings (VRP) at 224. After approximately one hour, the detective received a phone call from a person acknowledging that he was Mahamud Haro and was calling in response to the business card left at the residence.

At trial during preliminary motions, Haro objected to the admission of State's Ex. 1, bank statements from Haro's checking account with Bank of America. The bank statements showed that Haro had a very low to negative

balance around the time the forged check was deposited into his checking account. The trial court heard argument from both parties about the probative value and potential prejudice of the exhibit. The court found the exhibit relevant to and admissible for the purposes of establishing "knowledge," but excluded all references to "overdraft" fees or fines as more prejudicial than probative. Id. at 94-95. The court indicated to Haro that it would consider giving a limiting instruction regarding the exhibit, if one were proposed.

At trial, Bank of America investigator Tim Whitesitt testified that Ex. 1 reflected account records for Haro, and that the check-deposit in question occurred at the Westwood banking center. Whitesitt also testified that the records contained in Ex. 1 enabled him to determine at which ATM and on which date and time the check was deposited.

In closing argument, the State made two comments regarding Haro's bank account. The State argued that Haro "came across this check" and decided, because he didn't "have a lot of money in [his] bank account," to "write it out to himself, forge the account holder's signature, purport that check to be his own, and then deposit it into his own bank account." VRP (7/10/13) at 301-02. Haro's counsel objected to this argument as improper. Id. The trial court overruled the objection, stating that "[t]he jurors are reminded at this time that the statements and arguments by counsel are not, in and of themselves, evidence." Later, in its rebuttal remarks, the State asked the jury "[w]hy else would somebody forge a check for that amount of money when it's shown that in his account there is no

other transaction that even comes close to that?" Id. at 328-29. Haro's counsel did not object to this comment during closing argument.

The jury found Haro guilty of the crime of forgery and the court imposed a standard range sentence. Haro appeals.

## DISCUSSION

### Admissibility of Bank Statements

We review a trial court's evidentiary rulings for abuse of discretion. State v. Guloy, 104 Wn.2d 412, 429-30, 705 P.2d 1182 (1985). Discretion is abused when it is based on untenable grounds or for untenable reasons. Wash. State Physicians Ins. Exch. Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion." Dix v. ICT Group, Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

Haro argues that the trial court erred by admitting his bank statements and permitting the State to characterize a lack of funds as evidence of his guilt. Haro argued that the low to negative balance reflected in the bank statements allowed the jury to infer that because he was poor, he was more likely to commit a crime to obtain money. He also contends that in its closing remarks the State made that very argument to the jury. The State argues that the trial court exercised proper discretion in admitting Haro's account records to show knowledge that the check was forged. It further argues that it made no improper argument to the jury and that to the extent any impropriety occurred, it was cured by the trial court's

contemporaneous instruction to the jury. We conclude admission of the bank statements was not abuse of discretion. We also find, regarding the alleged improper comments by the State during its closing argument, that the issue is waived as to the second comment and although the first comment was improper, in light of the entire record, Haro's right to a fair trial was not prejudiced.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401. "'In determining relevance, (1) the purpose for which the evidence is offered must be of consequence to the outcome of the action and (2) the evidence must tend to make the existence of the identified fact more probable.'" State v. Jones, 93 Wn. App. 166, 173-74, 968 P.2d 888 (1998) (quoting State v. Suttle, 61 Wn. App.703, 710-11, 812 P.2d 119 (1991)). Relevant evidence may be excluded if "'its probative value is substantially outweighed by the danger of unfair prejudice....'" Id. (quoting State v. Rice, 48 Wn. App. 7, 13, 737 P.2d 726 (1987)); ER 403. Because the trial court has wide discretion in its evaluation of relevance under ER 401 and its balancing of probative value against its prejudicial effect or potential to mislead under ER 403, we will reverse only for a manifest abuse of that discretion. Jones, 93 Wn. App. at 173-74 (citing State v. Luvene, 127 Wn.2d 690, 707, 903 P.2d 960 (1995)).

Under RCW 9A.60.020(1), "[a] person is guilty of forgery if, with intent to injure or defraud: (a) He or she falsely makes, completes, or alters a written

5

instrument or; (b) He or she possesses, utters, disposes of, or puts off as true a written instrument which he or she knows to be forged." Haro's bank records showed that the deposit of a check totaling $4,768.25 was inconsistent with his transaction history. The trial court discussed the fact that "because this amount is aberrational, surely one would have – that would pique their knowledge of this?" and noted that because the amount of the check was "unusual," that "one would not cavalierly deposit this." VRP (7/08/13) at 91-92. In other words, the trial court concluded that the unusually large amount of the deposit at least arguably should have put Haro on notice that the check was a forgery. Thus, it found the evidence was relevant to and admissible on the issue of whether Haro knew the check was forged.[1]

Haro claims that even if the evidence is relevant, its prejudicial effect outweighed its probative value. He contends that the bank records gave rise to an impermissible inference that he committed the crime because he was poor. Moreover, he argues that the State used the evidence to improperly argue to the jury that his lack of funds proved his guilt.

---

[1] Haro claims on appeal that "[his] knowledge, the reason given for the admission of this evidence by the trial court, was never in dispute," and it was therefore error for the trial court to admit this evidence. Brief of Appellant at 7. This is not accurate. Haro raised the defense that there was "[n]o inference that the person in possession either forged it or know that it was not genuine absent an explanation." CP at 85. In closing argument, Haro disputed the element of knowledge and argued that the State only had "a hunch that Mr. Mahamud knew the check was forged, that's not enough." VRP (7/10/13) at 324. Haro also proposed an alternate jury instruction that would separate the two concepts of knowledge and intent, and the trial court engaged in a lengthy pre-trial discussion regarding the jury instruction related to knowledge. The element of knowledge was clearly in dispute.

"Evidence of poverty is generally not admissible to show motive" or to "create an inference that a defendant's financial status alone would suggest that he or she is more likely to commit a financially-motivated offense." State v. Kennard, 101 Wn. App. 533, 541, 6 P.3d 38 (2000) (citing United States v. Mitchell, 172 F.3d 1104, 1108 (9th Cir. 1999)); Jones, 93 Wn. App. at 174. Proof of poverty or desire for money, without more, "is likely to amount to a great deal of unfair prejudice with little probative value." Mitchell, 172 F.3d at 1109. Evidence of financial status, however, may be admissible to show that defendant was living beyond his or her means. State v. Matthews, 75 Wn. App. 278, 287, 877 P.2d 252 (1994) (evidence that defendant's lifestyle seemingly exceeded his income "established a link between [his] financial condition and a motive to commit robbery"); Kennard, 101 Wn. App. at 543 (evidence of bankruptcy was relevant because defendant was delinquent during the time of the robberies and the first creditor's meeting occurred shortly before the first robbery); cf., Mitchell, 172 F.3d at 1109 (not appropriate to admit evidence that did not show "more than the mere fact that the defendant is poor"). Additionally, an "unexplained and abrupt change in that status for the better" might indicate a motive to commit a crime. U.S. v. Jackson, 882 F.2d 1444, 1450 (9th Cir. 1989) (where witness testimony that he was surprised when defendant paid $100 because he never had any money was admitted).

In Jones, the trial court admitted documents from the Department of Employment Security that showed Jones had no reported income and did not

apply for unemployment compensation for a two year period during which at least one of the alleged cocaine sales occurred. 93 Wn. App. at 173. The trial court found the evidence to be probative with regard to whether or not Jones was selling drugs. Id. The trial court reasoned that Jones was "'not a person who is simply unemployed or not working, but a person who is unemployed who has a large amount of cash in his pocket and is accused of a crime for which profit is certainly a motive for commission of such an act.'" Id. On appeal, this Court found that the trial court engaged in proper balancing and concluded that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. Id. at 176. Had Jones been found "with no money after the alleged offense, or with an insignificant sum, the admission of evidence of Jones' financial situation would have been error." Id.

Here, the facts are similar to those in Jones and Jackson, where evidence of the defendant's financial status was properly admitted for a valid non-character purpose, such as to demonstrate an abrupt change in circumstances. Haro's bank statements were offered into evidence not to establish his poverty,[2] but to demonstrate that a deposit of a $4,768.25 check was inconsistent with his

---

[2] Haro argues that under Jones, the bank statements should not have been admitted because they were not essential to the State's theory of the case. The trial court in Jones stated that "financial records to show motive for theft or for the gain of money..., may be admissible if the state's theory of the case supports such a finding by the court." 93 Wn. App. at 173. This does not limit a trial court's discretion to admit such evidence for purposes other than motive without making a finding with regard to the theory of the case. Furthermore, in his brief Haro states that "[t]he State's theory of the case was that Haro forged one of Nguyen's checks and deposited it in his account." Brief of Appellant at 7. The account records showing the deposit into Haro's account would undoubtedly be essential to such a theory of the case.

transaction history. The trial court did not abuse its discretion when it concluded that the probative value of the evidence exceeded its prejudicial effect.[3]

Haro also argues he is entitled to a new trial because the State engaged in improper conduct during its closing argument. He points to the State's argument that Haro "came across this check. He decided, I don't have a lot of money in my bank account ... to take a check, write it out to himself, forge the account holder's signature, purport that check to be his own, and then deposit it into his own bank account." VRP (7/10/13) 301-02. And the State's rebuttal argument, asking "[w]hy else would somebody forge a check for that amount of money when it's shown that in his account there is no other transaction that even comes close to that?" VRP (7/10/13) 328-29. Haro did not object to the second comment, but objected to the first on the ground that it was an "improper comment." VRP (7/10/13) at 302. The court overruled his objection but reminded the jury "that the statements and arguments by counsel are not, in and of themselves, evidence." Id.

---

[3] To further minimize any concerns that a juror would consider Haro's bank statements for an improper purpose, the trial court invited Haro to propose an oral or written limiting instructions. The court proposed:

> At the time the information comes to the jurors, I would then read the limiting instruction to the jurors and advise them that they are instructed as follows: That they should not use this for this purpose; and/or in the written instructions we give to the jurors at the end of the case, we could have a written instruction that says that as well. Specifically it would say, with regard to Exhibit 6, whatever it is, or it turns out to be, you are not to consider this information for whatever. VRP (7/08/13) at 100.

Haro did not propose any instruction. VRP (7/10/13) at 288.

We review a prosecuting attorney's allegedly improper remarks in the context of the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. State v. Anderson, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009). The State is generally afforded wide latitude when making arguments to the jury and is allowed to draw reasonable inferences from the evidence. State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006). The defendant bears the burden of showing that the comments were improper and prejudicial. State v. Ish, 170 Wn.2d 189, 200, 241 P.3d 389 (2010). If the statements were improper, and an objection was lodged, we then consider whether there was a substantial likelihood that the statements affected the jury. Anderson, 153 Wn. App. at 427. Absent a proper objection and request for a curative instruction, however, defense waives the issue of misconduct unless the comment was so flagrant or ill-intentioned that an instruction could not have cured the prejudice. State v. Charlton, 90 Wn.2d 657, 661, 585 P.2d 142 (1978). Here, Haro failed to object to the second alleged improper comment and he does not argue that the comment was flagrant or ill-intentioned. Even assuming the comment to be improper, we conclude the issue is waived. Regarding the first comment, because Haro's objection was overruled, we consider whether the argument was improper and if so, whether the statement likely affected the jury.

The prosecutor argued that Haro's financial circumstances led him to seize the opportunity presented by the forged check. This argument is improper because it invites the jury to infer that Haro's financial status alone made him

more likely to commit the crime. See Kennard at 541 ("Evidence of poverty is generally not admissible to show motive.") (Citing Mitchell at 1108). In addition, it exceeds the bounds of the basis for the court's admission of the evidence, which was limited to showing Haro's knowledge that the check was forged.[4] But even though the comment was improper, Haro has not shown that this single characterization affected the jury's verdict. The State presented overwhelming evidence of Haro's guilt. The trial court also immediately reminded the jurors that "the statements and arguments by counsel are not, in and of themselves, evidence." VRP (7/10/13) at 302. This instruction appropriately mitigated any potential prejudice that might have resulted from the State's comment.

We find no abuse of discretion in admitting the evidence in question and while the State made improper remarks during its closing argument, it is unlikely, in light of the entire record, that they affected the verdict. We conclude that no new trial is warranted.

Statement of Additional Grounds

Haro submits a lengthy pro se statement of additional grounds ("SAG") containing over 150 issues. A defendant may submit a pro se statement of additional grounds for review pursuant to RAP 10.10. However, "[an] appellate court will not consider a defendant/appellant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged

---

[4] The trial court specifically prohibited the State from using the evidence to argue that poverty makes one more likely to commit a crime. The court stated, "I would not expect those arguments to be made, that is, one is more likely a criminal due to [poverty]. The Court would sustain [an objection to] any such argument in any event." VRP (7/08/13) at 94-95.

errors." RAP 10.10(c). Furthermore, we only consider arguments that are not repetitive of briefing. RAP 10.10(a). Finally, issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a statement of additional grounds. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Haro lists 175 additional errors that loosely fall into the following categories: philosophical musings; issues of fact that have no relevance to the alleged incident; tort and contract affirmative defenses; and miscellaneous allegations of error that lack factual support. First, Haro raises factual issues related to his actual name and title[5] Ms. Nguyen's identity, the receipt of checks by mail, cancellation of the check, and the proper opening of the bank account in question. None of these factual issues, if proven, would have any relevance to the charges against Haro, nor would they negate an element of the crime or excuse any conduct. Additionally, to the extent that these issues involve facts or evidence not in the record, they should be raised in a personal restraint petition.

Haro also alleges a number of legal theories as affirmative defenses, such as lack of jurisdiction, no proof of mailing/mailbox rule, unconscionability, contributory negligence, fault of shipper, informed consent, and a slew of other contract and tort defenses too numerous to list. Haro asserts only defenses that

---

[5] Haro entered a plea of not guilty, which puts every single element of the charge at issue, including identity. His statement of additional grounds argues that the State must do more than prove identity of names to establish beyond a reasonable doubt that he was the person who committed the crime. He does not allege, however, that he was misidentified by name and that it was error to rely on his name as evidence that he committed the crime. As a result, this issue is unreviewable under RAP 10.10(c).

would be relevant to tort or contract liability, not criminal forgery. Accordingly, we do not consider them.

Haro does raise a few issues in his SAG that could potentially be reviewable, such as prosecutorial misconduct, malicious prosecution, lack of competent plea bargaining, and various constitutional and civil rights violations. He provides no argument or facts to support these alleged errors and little context to assist the Court's review. While Haro is not required to cite to the record or authority in his SAG, he must still "inform the court of the nature and occurrence of [the] alleged errors, and this court is not required to search the record to find support for the defendant's claims." State v. Meneses, 149 Wn. App. 707, 715-16, 205 P.3d 916 (2009). None of Haro's grounds are sufficiently developed to allow review, and we do not reach them. Haro ultimately fails to present any meritorious arguments in his SAG.

*Affirmed.*

WE CONCUR: