IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82532-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RANDY SCOTT KARN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Randy Karn was found guilty of two counts of criminal mistreatment in the first degree and four counts of criminal mistreatment in the second degree following a jury trial. Karn argues that his convictions for criminal mistreatment in the second degree in counts V, VI, and VII are unsupported by sufficient evidence and that several of the aggravators found by the jury are inherent within the elements of criminal mistreatment in the second degree, such that the exceptional sentence he received was improper. We conclude that sufficient evidence was presented to the jury to support the disputed counts and we need not reach his second issue in light of an unchallenged aggravator which independently supports the exceptional sentence. We affirm.

FACTS

Following a jury trial, Randy Karn was found guilty of two counts of criminal mistreatment in the first degree as to Na.K. and T.K., along with four counts of

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

criminal mistreatment in the second degree as to Ro.K, J.K., Ru.K., and K.K. Each of the named victims was a biological child of Karn and his wife, Mindie Karn.[1] The case arose from the general living conditions experienced by the Karns' biological children prior to intervention by the Department of Children, Youth and Families.[2]

At trial, A.K., Ro.K., T.K., Ni.K., and Na.K.[3] all testified generally as to the conditions in which Randy raised them. The testimony indicated a general lack of sufficient and consistently available food in the household. However, the siblings indicated that both Mindie and Karn often obtained food for themselves outside of the home and had locked personal food storage in the house, while leaving the children with strained access to adequate nutrition. They also indicated that though they were supposed to be homeschooled, such education occurred briefly and was sporadic in nature. Further, the testimony from the youths established that the residence lacked in appropriate hygiene, leaving them to exist in a home environment contaminated by insects, feces, and urine. There was testimony that described the property as littered with hazardous materials such as rusty nails, broken glass, and random boards. The siblings also discussed limited access to toys and clean clothing, and the fact that they did not receive medical care from professionals, despite later diagnoses of ailments that required treatment for several of them.

---

[1] Because they share the same last name, we refer to Mindie by her first name. No disrespect is intended.

[2] On July 1, 2018, the newly created Department of Children, Youth, and Families (DCYF) took over child welfare duties that were formerly the responsibility of the Department of Social and Health Services (DSHS). RCW 43.216.906. Accordingly, in this opinion, "Department" means DSHS before July 1, 2018, and DCYF on and after July 1, 2018.

[3] Some of the siblings were adults at the time of the investigation and trial. However, out of respect for the privacy interests of the minor children who were named victims in this case, we refer to all of the Karn siblings by initials only, regardless of age.

Numerous community members testified as to their interactions with the victims when they were allowed to begin attending a local church. These witnesses remarked that the children often appeared unclean and hungry and detailed attempts to provide the children with food when they visited the church. Additionally, the neighbor who had lived across the street from the Karns, and ultimately called authorities, testified as to her concerns about the living conditions when she saw the children in their yard.

Foster parents and various Department employees involved in the case recounted how the youths all arrived into their care with myriad, and quite drastic, behavioral issues. Numerous witnesses described the children as being "feral" and without much understanding of how to care for themselves or how things operated outside of the home, and severely lacking in communication skills.

Various medical professionals, all of whom had examined or treated at least one of the victims, testified to varying degrees about the health conditions they treated, as well as how the conditions of the Karns' lifestyle likely were a major cause of the harm and risk in which the children were placed generally. Dr. Megan Spohr, who evaluated N.K. and Ro.K., testified that the malnutrition they experienced generally leads to poor immunity which tends to place children at a higher risk for infection and potential death. Dr. Aimee Gerard-Morris, a pediatric neuropsychologist, testified about the manner by which maltreatment and lack of nutrients provide for potentially toxic stress and limit neurological development. When specifically asked if inadequate brain development was purely a mental or physical injury, or a combination thereof, she replied:

> So there certainly can be effects of emotional changes secondary to these effects of maltreatment, but there's also physical changes that may not be, you know, as identifiable as a bruise or, you know, some kind of physical indicator of injury, but at a neuronal level and a neurochemical level that, again, we can't see with the naked eye, you know, that would be considered an injury or an alteration to how an individual's brain was supposed to develop.

Dr. Cathleen Lang, a pediatrician with CARES (Child Abuse Responsive and Evaluation Services) Northwest who interacted with T.K., J.K., Ru.K., Ro.K., K.K., and Na.K. at the emergency room when they were initially admitted, opined as to the ways malnutrition places an individual at severe risk of potential death if refeeding syndrome develops. Na.K. was diagnosed with refeeding syndrome after removal from Karn's home. Lang also explained that medical neglect was what likely led to Na.K.'s severe health issues. She further indicated that a reasonable caregiver would have noticed multiple warning signs that should have signaled a need for medical care. Lang provided general testimony regarding how the lack of medical care and conditions of a home such as the Karns' would place the siblings at risk of infections and why child wellness checks are necessary to their general overall health. In all, over a dozen medical professionals testified at trial as to the various children, their individual medical diagnoses or the living conditions and child development generally.

The defense also called multiple witnesses, including family members. Additionally, Karn and Mindie testified during the presentation of the defense case. The description from these witnesses as to the environment of the Karns' home starkly contrasted the testimony presented by the State's witnesses.

At the close of trial, the jury returned a verdict of guilty on all counts. The jury further found by special verdict that the State had proven both alternative prongs of criminal mistreatment in the second degree and that all of the aggravating circumstances alleged by the State had been proven. The trial court imposed an exceptional sentence of 247 months in prison. Karn now appeals.

ANALYSIS

I.    Sufficiency of the Evidence

Karn argues that the evidence presented by the State was insufficient to establish his guilt beyond a reasonable doubt for criminal mistreatment in the second degree in counts V, VI, and VII. Count V was for the mistreatment of J.K., count VI as to Ru.K., and count VII based on the mistreatment of K.K. Karn does not dispute that the evidence supports his convictions for the other remaining counts. In light of the extensive evidence adduced at trial, we conclude that there was sufficient evidence to support the convictions for the challenged counts.

In reviewing whether evidence is sufficient to sustain a conviction, "we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "A challenge to the sufficiency of the evidence admits the truth of the State's evidence." State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). "In determining whether the requisite quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but

only that substantial evidence supports the State's case." State v. Jones, 93 Wn. App. 166, 176, 968 P.2d 888 (1998).

Counts V, VI, and VII were independent charges of criminal mistreatment in the second degree for three separate victims. Criminal mistreatment in the second degree is codified by RCW 9A.42.030(1). The statute provides the following:

> (1) A parent of a child, the person entrusted with the physical custody of a child or dependent person, a person who has assumed the responsibility to provide to a dependent person the basic necessities of life, or a person employed to provide to the child or dependent person the basic necessities of life is guilty of criminal mistreatment in the second degree if he or she with criminal negligence, as defined in RCW 9A.08.010, either (a) creates an imminent and substantial risk of death or great bodily harm by withholding any of the basic necessities of life, or (b) causes substantial bodily harm by withholding any of the basic necessities of life.

RCW 9A.42.030 (emphasis added).

RCW 9A.42.030 provides for two alternative means of proving criminal mistreatment in the second degree. The State proceeded on both alternatives for all of those charges at trial. Further, based on special verdict forms provided to the jury as to each of the challenged counts, it is clear that the jury found both means of criminal mistreatment in the second degree were established beyond a reasonable doubt for counts IV through VII.[4] Karn claims that "[b]ecause there is no evidence that [J.K.], [Ru.K.,] or [K.K.] sustained substantial bodily harm or was in imminent and substantial risk of great bodily harm or death, the State did not meet its burden" with regard to counts V, VI and VII. However, Karn admits in briefing that "the State presented evidence from which the jury could find he failed to provide his children with basic necessities." Karn's argument is specific to the

---

[4] Again, Karn does not challenge his conviction as to count IV.

second element of criminal mistreatment; that the State failed to establish that this withholding, as it related to J.K., Ru.K., and K.K., created an imminent and substantial risk of death or great bodily harm, or that he recklessly caused substantial bodily harm to any of these three children. Karn's claim wholly ignores the totality of the evidence that the State presented at trial.

In reviewing the evidence presented by the State, there was extensive testimony provided by a number of doctors, psychologists, and psychiatrists regarding the risks associated with the conditions in which these children existed due to Karn's withholding of basic necessities. The children all testified similarly regarding the lack of food, medical care, basic hygiene, and appropriately safe living conditions. Further, it is telling that Karn does not challenge the numerous other counts related to his other biological children, several of which resulted in specific jury findings of injuries sustained by those children. This, in and of itself, appears to logically provide that the conditions were such that J.K., Ru.K., and K.K. were at substantial risk of sustaining great bodily harm had they continued to reside in the home under those same conditions. See State v. Kirkman, 159 Wn.2d 918, 938, 155 P.3d 125 (2007) ("Juries embody the 'commonsense judgment of the community'" (quoting Taylor v. Louisiana, 419 U.S. 522, 530, 95 S. Ct. 692 (1975))). Even assuming the jury did not utilize such logic, multiple medical professionals opined on the various ways that the conditions testified to by the children placed them at great risk and were the likely causes of the children's current health challenges.

We decline to weigh further the many specific ways that Karn's withholding of basic necessities, which he admits on appeal, placed these young children at imminent and substantial risk of death or great bodily harm. Sufficient evidence was produced at trial to support Karn's convictions under counts V, VI, and VII.[5]

II.    Aggravating Factors

Karn next challenges the exceptional sentence that was imposed, arguing that three of the five aggravating factors that were found by the jury and used by the court as the basis for the exceptional sentence, are inherent within the convictions for criminal mistreatment in the second degree. However, we decline to specifically review each aggravator in light of the trial court's determination at sentencing and the fact that the domestic violence aggravator, which Karn does not challenge, independently supports his exceptional sentence.

RCW 9.94A.535 states "[t]he court may impose a sentence outside the standard range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence." Unless the defendant waives their right to a jury or stipulates to aggravating factors, findings supporting an exceptional sentence must be determined by a jury beyond a reasonable doubt. Blakely v. Washington, 542 U.S. 296, 304–05, 124 S. Ct. 2531 (2004); RCW 9.94A.525; RCW 9.94A.537. "Exceptional sentences are intended to impose additional punishment where the particular offense at issue causes more damage than that contemplated by the statute defining the offense." State v. Davis, 182

---

[5] Though Karn's argument on appeal centers on whether various mental health conditions, including post-traumatic stress disorder, qualify as substantial bodily harm under RCW 9A.42.030, given the special verdict findings by the jury, we need not consider such argument.

Wn.2d 222, 229, 340 P.3d 820 (2014). RCW 9.94A.585(4), which directs the manner by which this court reviews an exceptional sentence, states:

> To reverse a sentence which is outside the standard sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

In Karn's case, the sentencing court made clear in its findings of fact and conclusions of law for the exceptional sentence that it "would impose the same sentence if only one of the grounds listed in the preceding paragraph was valid." The specific findings that provided the required bases for the imposition of an exceptional sentence included:

> (a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victims. RCW 9.94A.535(3)(a)
>
> (b) The offense involved domestic violence, as defined in RCW 10.99.020, and the offenses were part of an ongoing pattern of psychological or physical [abuse] of a victim or multiple victims manifested by multiple incidents over a prolonged period of time under RCW 9.94A.535(3)(h)(i).
>
> (c) The jury found that the defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offenses. RCW 9.94A.535(3)(n).
>
> (d) The jury found that the offenses involved a destructive and foreseeable impact on persons other than the victims. RCW 9.94A.535(3)(r).
>
> (e) As to count five, the jury found that the defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance. RCW 9.94A.535(3)(b).

Karn only challenges aggravators (a), (c), and (d). In light of the sentencing court's indication that it would impose the same exceptional sentence based on any one

of these factors alone and the fact that Karn does not dispute the validity of (b) as a basis for the exceptional sentence, further consideration of this assignment of error is unnecessary.  <u>See</u> RCW 9.94A.585(4).

Affirmed.

WE CONCUR: