IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34999-3-III (consolidated |
| Respondent, | ) | with no. 35072-0-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOSHUA DAVID AVALOS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury found Joshua Avalos guilty of possession of stolen property. During sentencing, the court ordered $1,000 in restitution. Avalos now appeals and asserts insufficient charging language, evidentiary errors, instructional error, prosecutorial misconduct, cumulative error, and sentencing error. We find no error leading to the verdict and affirm the conviction. Since the trial court did not base the restitution order on the facts that led to the conviction, we vacate the restitution judgment.

FACTS

On August 24, 2015 somebody burgled the Quincy home of Guange Zhang and Ling Wang (the Zhangs), husband and wife. During the homebreak, thieves took, among other personal property, $10,000 in cash, three pure gold decorations purchased in China,

a pendant with a diamond, a platinum wedding ring with a diamond, tax records, and five vehicle titles. Law enforcement recovered few of the purloined objects.

Guange Zhang and Ling Wang own a Chinese restaurant in Quincy. The restaurant handles large amounts of cash. The couple stored cash, separated in bundles surrounded by rubber bands, in the family residence.

On August 26, 2015, two days succeeding the burglary, Ephrata Police Officer Josh Buescher stopped Joshua Avalos as he drove a car in the county seat. As a result of the stop, Avalos' vehicle was towed. The tow truck driver found Avalos' wallet in the vehicle and delivered the wallet to law enforcement. The wallet contained $1,900 in cash. Law enforcement handed the cash and wallet back to Avalos.

On some unspecified date in late August 2015, Joshua Avalos purchased a used Cadillac. Angela Olivares sold him the vehicle for $4,000 in cash.

One might reason that, after the August 26 stop, Joshua Avalos would drive carefully. Nevertheless, on August 31, 2015, five days after the first traffic stop, Quincy Police Officer Austin Key stopped Avalos, in his Cadillac, for a traffic violation in Quincy. Four passengers then rode in the car.

Officer Austin Key found a backpack in the backseat of Joshua Avalos' car. Avalos first declared ownership of the pack, but then denied knowing who owned the bag. Officer Key opened the backpack to determine if he could identify the owner of the pack. He first saw a manila envelope with the Zhangs' name thereon and tax documents

2

of the Zhangs inside the folder. Key arrested Avalos. In a search incident to arrest, Key seized $1,000 in cash and a rubber band from Avalos' pant pocket.

After arresting Joshua Avalos, Officer Austin Key impounded the Cadillac and garnered a search warrant for the car. The warrant listed objects that the Zhangs identified as stolen from the home and valued the stolen wedding ring at $4,000. We assume that, when searching the car, law enforcement also further searched the backpack found in the car. Law enforcement found a picture identification card and a social security card for Avalos inside the pack. The pack also held jewelry linked to the Zhangs' home burglary.

## PROCEDURE

The State of Washington charged Joshua Avalos with burglary, theft, possession of stolen property in the second degree, and trafficking in stolen property. The charging information related to the possession charge stated:

> On or about the 31st day of August, 2015 . . . the above-named Defendant did, knowingly receive, retain, possess, conceal, or dispose of stolen property, knowing that it had been stolen, and did withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto, said property being in excess of seven hundred fifty dollars ($750.00) but less than five thousand dollars ($5,000.00) in value.

Clerk's Papers (CP) at 18. Avalos did not challenge the sufficiency of the language before his conviction. The trial court dismissed before trial, due to insufficient evidence, the burglary, theft, and trafficking charges.

3

Joshua Avalos moved in limine on the first day of trial to exclude any evidence of prior bad acts, as prohibited by ER 404(b), unless the State conducted a hearing outside the presence of the jury. In a written motion, Avalos identified no earlier bad acts that he wished excluded. During argument on the motion, Avalos asked the trial court to exclude evidence that Officer Josh Buescher stopped Avalos on August 26, 2015. Avalos emphasized that the State did not charge him with possessing any stolen property on August 26.

In response to the motion in limine, the State commented that it wished to introduce evidence of the August 26 traffic stop in order that the jury would know Joshua Avalos then held $1,900 in cash in his wallet. According to the State, Avalos lacked any explanation for his possessing the cash. The trial court denied Avalos' motion in limine at least to the extent that the State wished to present testimony of the August 26 stop. When issuing its oral ruling, the court referred to the possession of the cash on August 26 as a contemporaneous, rather than earlier act. The trial court did not discuss prejudice suffered by Avalos from the testimony. Avalos never sought exclusion of the evidence on the basis of ER 403.

At trial, Ephrata Police Officer Josh Buescher testified that, while on duty on August 26, 2015, he "[had] contact" with Joshua Avalos. Report of Proceedings (RP) (Dec. 15, 2016) at 178. Buescher did not mention that he stopped Avalos or that he arrested Avalos. Buescher also testified that Avalos got "separated" from the vehicle he

4

drove and that someone towed the vehicle. RP (Dec. 15, 2016) at 178. Buescher's one page testimony disclosed no other details about Joshua Avalos. The State presented no testimony about the reason for Joshua Avalos' stop or the impoundment of his car on August 26.

After the testimony of Officer Josh Buescher, the State called to testify Craig Whitaker, the tow truck driver. Whitaker testified that his son found a wallet in a car that Whitaker impounded for law enforcement. Whitaker delivered the wallet to law enforcement. Whitaker found no other purportedly stolen property in the impounded car.

Ephrata Police Patrol Sergeant Gabriel Garcia testified he looked inside the wallet and determined Joshua Avalos to own the wallet. Sergeant Garcia also testified the wallet contained $1,900 in cash. Law enforcement returned the cash to Avalos since police lacked a link between the cash and the Zhangs' home burglary.

The trial court admitted, over defense objection, evidence that Joshua Avalos purchased a used car on some unspecified date in late August. Angela Olivares testified that she and her husband sold a Cadillac to Avalos for $4,000 cash, which vehicle Avalos drove on August 31.

Joshua Avalos objected to testimony concerning the cash he carried on August 31 when arrested. Avalos contended that no evidence related the $1,000 in cash to the Zhangs' home burglary, particularly since the State presented no evidence identifying the denominations or serial numbers of bills taken from the residence. Avalos conceded that

5

the type of tan rubber band found in his pocket correlated to the rubber bands the Zhangs

used to bundle cash. He argued, however, that tan rubber bands lack uniqueness.

Joshua Avalos claimed the State could not lay a foundation that the cash in his

possession originated from the Zhangs' abode. The State replied that a jury could

reasonably infer that the cash found on Avalos came from the burglary since the

backpack found in the car, on August 31, contained other objects from the homebreak

and because Avalos lacked other means of obtaining funds.

The trial court denied Joshua Avalos' motion to exclude testimony of the cash and

rubber band found in his pocket when arrested. The court found the evidence relevant to

the question of whether Avalos knowingly possessed stolen property.

Joshua Avalos proposed a limiting instruction relating to the $1,000 cash found at

the time of his arrest. The proposed instruction read:

> In considering the charge of Possession of Stolen Property 2nd
> Degree you are not to consider the money as stolen property. You may
> consider the other property items alleged to have been stolen and admitted
> into evidence in your deliberations.

CP at 261. The trial court refused to deliver the instruction.

During trial, an Employment Security Division employee testified that Joshua

Avalos had no reported employment in Washington State between 2013 and trial. Avalos

objected, in advance of the testimony, to the testimony on a lack of relevance and ER

404(b), the rule that generally precludes evidence of earlier bad conduct. He did not

6

assert ER 403 as a basis for the objection. Avalos argued that the evidence of his lack of

reported income functioned as propensity evidence that targeted him as chronically

unemployed. The State responded that it did not introduce the evidence to show Avalos

committed a crime because of poverty, but to show that employment did not explain

Avalos' possession of large amounts of cash on August 26 and 31.

To prove the charge of possession of stolen property in the second degree, the

State needed to establish that Joshua Avalos possessed stolen property exceeding $750.

During closing argument, the State's counsel commented:

> First of all, Mr. Kozer [defense counsel] admitted that the search warrant was looking for a wedding ring that was valued at $4,000. This matches the description. There's only one ring on that list. It's right here. It's a diamond ring. You can use your common sense about how much things are worth in addition to what's evidence—put into evidence. This ring alone is worth more than $750, even if it's not worth exactly 4,000. But you can easily conclude it's worth more than 750, along with the other gold items in here and the jewelry and the other diamond pendant that's in this jewelry that you can look at.
> The other way is the cash. $1,100 in cash rough—give or take. Did that come from the burglary? Ladies and gentlemen, your instructions tell you can consider both direct and circumstantial evidence.
> Now, the officers in Ephrata found cash on Mr. Avalos a few days prior, a bunch of cash. They didn't conclude it came from the burglary because they didn't have all the other evidence that went with this.
> But when Mr. Avalos was caught on the 31st he had all the evidence from the burglary. The officers' found out that he had got a car for $4,000 after his car was taken by the towing company. He doesn't work in any kind of legitimate job.
> Now, Mr. Kozer will come up and say, I'm sure, "Well, there's other ways he could have gotten that cash. He could have worked under the table[,"] whatever. That's possible. That's where the reasonable and reasonable doubt comes in. When you look at all the evidence, is it

> reasonable to conclude that he got that cash from some other source when you consider that it's within a week of the burglary, all of a sudden he has all this cash. There's no other—what other explanations are reasonable? That's for you to decide.

RP (Dec. 16, 2016) at 288-90. Defense counsel did not object to any of the quoted comments of the State's attorney.

The jury found Joshua Avalos guilty of second degree possession of stolen property.

During sentencing, the State asked the court to impose restitution in the amount of $5,000. The State argued that the court could reasonably conclude that the $4,000 Joshua Avalos paid for the Cadillac was part of the cash stolen in the burglary and never recovered. The State requested that Avalos pay $4,000 and an additional $1,000 from the $1,900 returned to Joshua Avalos from the August 26 Ephrata stop. The State did not attribute any of the $5,000 requested amount to the jewelry or cash recovered from Avalos on August 31. The $1,000 found in Avalos' pocket, on August 31, represented approximately one-half of the amount found in his wallet on August 26. On the incorrect assumption that Avalos possessed $2,000 in his wallet, $1,000 represented one-half of the amount he held five days earlier.

Joshua Avalos observed that the State charged him with possessing stolen property only on August 31. Law enforcement returned to the Zhangs all of the cash and property Avalos possessed on August 31. Therefore, according to Avalos, the Zhangs suffered no

harm from his possessing stolen objects on that date. Joshua Avalos argued for no restitution.

The trial court ordered only $1,000 in restitution. The court denied a higher award because the State did not charge Joshua Avalos with any crime related to the purchase of the $4,000 car. The charging information only charged Avalos with possession of stolen property on August 31, and Avalos had already expended the $4,000 to purchase the car on an earlier date.

## LAW AND ANALYSIS

Joshua Avalos asserts numerous assignments of error on appeal. First, the charging information failed to properly apprise him of the charges. Second, the trial court violated ER 401, 402, and 403 by admitting evidence that permitted the inference that he more likely than not stole money because of his financial situation. Third, the trial court erred by allowing testimony of the August 26 stop in Ephrata because the stop constituted a prior bad act under ER 404. Fourth, the prosecutor engaged in misconduct by attempting to shift the burden of proof to Avalos. Fifth, the trial court erroneously set the restitution amount. We address these assignments in such order.

### Charging Information

Joshua Avalos observes that the information charged him with possession of unidentified "stolen property" belonging to an unnamed person. Avalos then maintains that the lack of specifics did not provide him adequate notice of the charges such that the

9

information was constitutionally deficient. The State responds that, in Washington, the charging language need not identify the property or victim. Based on *State v. Tresenriter*, 101 Wn. App. 486, 495, 4 P.3d 145, 14 P.3d 788 (2000), we agree with the State.

The accused in a criminal case has a constitutional right to notice of the alleged crime the State intends to prove. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. The charging information provides that notice. CrR 2.1(a)(1). The State must include, in the information, all essential statutory and court imposed elements of the alleged crime. *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991).

A defendant may bring a constitutional challenge to the information at any time, even on appeal. *City of Seattle v. Jordan*, 134 Wash. 30, 34, 235 P. 6 (1925). Nevertheless, when a party challenges the information for the first time on appeal, we apply a liberal construction rule. *State v. Kjorsvik*, 117 Wn.2d at 105-08. Under the first prong of the liberal construction rule, we ask whether the allegedly missing language can be found by fair construction in the whole of the charging document, thus reasonably apprising the defendant of the elements of the crime charged. *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010). Under the second prong, we ask whether the information's unartful language prejudiced the defendant. *State v. Kjorsvik*, 117 Wn.2d at 106.

The State may correct, under a bill of particulars, a charging document that lists

10

the statutory elements of a crime, but is vague as to other significant data. *State v. Leach*, 113 Wn.2d 679, 687, 782 P.2d 552 (1989). Under such circumstances, the law precludes a defendant from challenging the information on appeal if he failed to request the bill of particulars before trial. *State v. Holt*, 104 Wn.2d 315, 320, 704 P.2d 1189 (1985).

In *State v. Tresenriter*, 101 Wn. App. 486 (2000), the State charged Michael Tresenriter with "knowingly possess[ing] property of a value greater than $250 knowing it was stolen." 101 Wn. App. at 494-95. Tresenriter argued that the charging language inadequately gave notice of the nature of the stolen property, the location of the property, and the date of his possession of the property. This court denied Tresenriter relief from the conviction for possession of stolen property because the identity of the stolen objects, the location of the subject of the theft, and the date of possession were not elements of the crime. Assuming Avalos desired more details of the charges, he could have asked for a bill of particulars.

Employment Security Department Records

Joshua Avalos contends that the State's evidence relied on a tenuous, if not false, assumption that a person with no recorded employment would not possess large sums of cash unless he stole the money. Avalos emphasizes that the State could not trace the money he possessed to the money taken from the Zhangs' home. Avalos also complains that prejudice to him from the testimony from the Employment Security Department outweighed any probative value.

11

The State responds that the combined evidence of the cash in Joshua Avalos' possession and his lack of earnings record tended to show that Avalos' sudden affluence came from stolen property. The State emphasizes that it presented evidence of possessing other stolen property, including tax documents and jewelry purloined during the Zhang burglary, at the time it seized $1,000 from Avalos. The State highlights that, even without evidence of cash in Avalos' possession, the State presented uncontroverted evidence that Avalos possessed the ring valued at $4,000. According to the State, this evidence alone sufficed to convict Joshua Avalos of second degree possession of stolen property.

Unremarkably, relevant evidence is admissible; irrelevant evidence is not admissible. ER 402. Relevant evidence tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. To be relevant, evidence must tend to prove or disprove the existence of a fact, and that fact must be of consequence to the outcome of the case. *State v. Weaville*, 162 Wn. App. 801, 818, 256 P.3d 426 (2011). The trial court may exclude relevant evidence if its danger of unfair prejudice substantially outweighs its probative value. ER 403.

This appellate court reviews evidentiary rulings for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). The trial court abuses its discretion

if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Evidence of poverty is generally not admissible to show motive. *United States v. Mitchell*, 172 F.3d 1104, 1108 (9th Cir. 1999). The State may not introduce evidence of poverty on the assumption that poor people are more likely to steal than wealthy people. *State v. Matthews*, 75 Wn. App. 278, 286, 877 P.2d 252 (1994). But the State may submit evidence regarding a defendant's financial state if the defendant experienced an unexplained, abrupt change in financial circumstances or lived beyond his or her means. *United States v. Bensimon*, 172 F.3d 1121, 1129 (9th Cir. 1999); *State v. Kennard*, 101 Wn. App. 533, 540-41, 6 P.3d 38 (2000).

We follow the teachings of *State v. Matthews*, 75 Wn. App. at 286 (1994) and *State v. Jones*, 93 Wn. App. 166, 175, 968 P.2d 888 (1998). In *State v. Jones*, the State offered evidence of a large amount of cash found on the defendant's person shortly after commission of the alleged crime to show that the defendant likely obtained the money by dealing cocaine. This court held:

> The relevance and probative value of this large sum of money after an alleged drug deal is undisputed. To rebut Jones's likely argument that he acquired this money from a lawful source, the State sought to present evidence that Jones had no apparent source of lawful income. We conclude that the State was entitled to anticipate Jones's defenses in this manner. The evidence was not intended to establish that Jones was a drug dealer simply because he had no reported income; rather, the financial reports became relevant when the State presented evidence of money found on Jones's person during his arrest and inquired about its source. . . . It should

13

> be noted that if Jones had been found with no money after the alleged offense, or with an insignificant sum, the admission of evidence of Jones's financial situation would have been error. In this case, the trial court engaged in proper balancing and concluded that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion.

*State v. Jones*, 93 Wn. App. at 175-76 (footnotes omitted).

In *State v. Matthews*, 75 Wn. App. at 286 (1994), the jury convicted Steven Matthews of murder attendant to a store robbery. This court held that the trial court did not abuse its discretion when permitting introduction of evidence of Steven Matthews' recent bankruptcy. The State introduced the evidence not to focus on the defendant's poverty, but to establish that the defendant's recent lifestyle exceeded the family's income.

Joshua Avalos' employment history, or lack thereof, contradicted any claim that he lawfully possessed the $1,900 in cash found on his person on August 26, the $4,000 tendered to purchase the used Cadillac, and the $1,000 in cash found in his pants on August 31. The evidence showed a noticeable change in his financial circumstances at the end of August 2015. The trial court did not abuse its discretion in allowing evidence of Avalos' apparent change in financial circumstances.

On appeal, Joshua Avalos contends that the lack of income reported to the Employment Security Department held little, if any, probative value compared to the high risk that the jury would unfairly infer that he must possess cash stolen from the Zhangs'

14

residence. Nevertheless, at trial, Avalos did not assert ER 403 as a basis to exclude the testimony. To preserve an evidentiary issue for appellate review, the specific objection made at trial must be the basis of a party's assignment of error on appeal. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). Therefore, we decline to review any challenge on appeal to the evidence under ER 403.

Earlier Police Contact and $1,900 Cash

The trial court denied Joshua Avalos' motion in limine to exclude testimony from Officer Josh Buescher that the officer stopped Avalos' car on August 26 and that Avalos' wallet contained $1,900 on that date. Avalos contends that the trial court denied the motion, brought under ER 404, without identifying the purpose for which the State offered the evidence or weighing the evidence's probative value with the risk of unfair prejudice attended to the testimony. According to Avalos, the evidence unfairly implied that Avalos tended to commit crimes.

The State responds that the trial court conducted an inquiry, characterized the August 26 stop as a contemporaneous act, not a prior bad act, and determined the evidence probative of whether Joshua Avalos knowingly possessed stolen property. The State adds that it sanitized the evidence because it recognized the potential for prejudice. The State never mentioned the reason for the impoundment of the car. The State never claimed that law enforcement stopped Avalos on August 26 because of any wrongful

15

behavior.  The State further contends that any failure on the record to balance the probative value versus the prejudice of the evidence constitutes harmless error.

We already concluded that evidence of possession of the $1,900 on August 26 possessed relevance to the charge of possessing stolen property from the Zhangs' residence.  The State needed to provide evidence of the Ephrata traffic stop in order to establish Joshua Avalos as the one possessing the cash.

This court reviews evidentiary rulings, including rulings about evidence of character or past conduct, for abuse of discretion.  *State v. DeVincentis*, 150 Wn.2d at 17 (2003).  Discretion is abused if it is exercised on untenable grounds or for untenable reasons.  *State ex rel. Carroll v. Junker*, 79 Wn.2d at 26 (1971).

Washington's familiar ER 404(b) reads, in pertinent part:

> **Other Crimes, Wrongs, or Acts**.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b) prohibits evidence of past misdeeds solely to prove a defendant's criminal propensity.  *State v. Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006).  Evidence of prior bad acts is presumed inadmissible, and any doubts as to admissibility are resolved in favor of exclusion.  *State v. DeVincentis*, 150 Wn.2d at 17; *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

16

The trial court viewed evidence of the August 26 seizure of money as a contemporaneous bad act, not a prior bad act. Although ER 404(b) does not expressly limit its bar to prior behavior, courts have so limited the rule. The law labels contemporaneous bad acts, including uncharged crimes committed around the time of the charged incident, as "same transaction" or "res gestae" evidence. *State v. Tharp*, 27 Wn. App. 198, 204, 616 P.2d 693 (1980), *aff'd*, 96 Wn.2d 591, 637 P.2d 961 (1981). The rationale for admitting res gestae evidence is that the jury is entitled to know the whole story, and a defendant may not insulate himself by committing a string of connected offenses and thereafter force the prosecution to present a truncated or fragmentary version of the transaction by arguing that evidence of other crimes is inadmissible because it only tends to show the defendant's bad character. *State v. Tharp*, 27 Wn. App. at 205. The threshold consideration for res gestae evidence is its logical relevance to the charged crime. *State v. Saltarelli*, 98 Wn.2d 358, 361, 655 P.2d 697 (1982).

The trial court examined the entire circumstances surrounding the burglary and Joshua Avalos' possession of cash and objects taken from the Zhangs' residence. The trial court reasonably concluded that the large amount found in Avalos' wallet two days after the homebreak related to whether Avalos possessed stolen property on August 31 and whether he knew the property to be stolen. On appeal, Avalos does not argue against characterizing the cash in the wallet as contemporaneous behavior. Therefore, we do not

17

examine further whether ER 404(b) precluded the evidence or whether the trial court

performed the needed analysis on the record to admit ER 404(b) evidence.

Cash when Arrested

Joshua Avalos next assigns error to the trial court's refusal to deliver Avalos'

proposed jury instruction limiting the jury from considering the $1,000 cash found in his

pants at the time of the August 31 arrest as stolen property. According to Avalos, no

evidence related the cash in his pocket to the Zhang burglary. Avalos maintains that the

trial court ruled that evidence of the cash was admissible because the evidence related to

Avalos' knowledge that other objects found in the Cadillac were stolen, not because the

cash was stolen cash. Avalos further contends that, without including the $1,000 in the

calculation of the value of objects stolen, the jury likely would not have valued the

remaining stolen property at more than $750, a predicate to second degree possession of

stolen property.

The State responds that, although the trial court stated the $1,000 in cash related to

Joshua Avalos' knowledge of stolen property, the trial court never limited its evidentiary

ruling to Avalos' knowledge being the sole purpose of the evidence. The trial court

confirmed the lack of a limited purpose for the evidence when the court denied Avalos'

proposed limiting instruction. We agree with the State.

When a court admits evidence only for a limited purpose, the court must give an

instruction admonishing the jury to consider the evidence only for that purpose and

prohibiting the jury from making any improper inferences from the evidence, when a party seeks such an instruction. *Sturgeon v. Celotex Corp.*, 52 Wn. App. 609, 623-24, 762 P.2d 1156 (1988). Since the trial court did not allow the evidence of the $1,000 for a limited purpose, the court committed no error by denying the instruction.

Shifting Burden of Proof

Joshua Avalos next contends the prosecution committed prejudicial misconduct in closing argument by attempting to shift the burden of proof to Avalos. Avalos emphasizes the prosecution's statement that no evidence showed that Avalos obtained the cash in his pocket or the money used to purchase the vehicle by lawful means. He notes that he would need to present any evidence of that nature. Therefore, the prosecutor's argument effectively reduced the State's burden to show he possessed stolen cash. According to Avalos, the State shifted the case burden to him to explain from whence the money originated. Avalos characterizes the prosecutor's argument as improper and flagrant.

The State responds that the prosecution merely asked the jury to examine whether any reasonable explanation explicated Joshua Avalos' sudden affluence other than the cash coming from the Zhangs' homebreak. According to the State, it may properly comment on the lack of evidence when that evidence could come from someone other than the defendant. We agree with the State.

To prove prosecutorial misconduct, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). Prosecutorial misconduct requires reversal only if there is a substantial likelihood that the misconduct affected the verdict and thus deprived the defendant of his right to a fair and impartial trial. *State v. Wilson*, 20 Wn. App. 592, 595, 581 P.2d 592 (1978).

Joshua Avalos did not object at trial to the closing argument of the State. If the defendant does not object to alleged misconduct at trial, the defendant waives the claim of prosecutorial misconduct unless the misconduct was "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997). The "flagrant and ill-intentioned" standard for misconduct requires the same "strong showing of prejudice" as the test for manifest constitutional error under RAP 2.5(a). *State v. O'Donnell*, 142 Wn. App. 314, 328, 174 P.3d 1205 (2007). We review the allegedly improper argument in the context of (1) the total argument, (2) the issues in the case, (3) the instructions, if any, given by the trial court, and (4) the evidence addressed in the argument. *State v. Perez-Mejia*, 134 Wn. App. 907, 916-17, 143 P.3d 838 (2006).

A prosecutor may comment on the absence of certain evidence if persons other than the defendant could have testified regarding that evidence. *State v. Ashby*, 77 Wn.2d 33, 37-38, 459 P.2d 403 (1969). The prosecutor may comment on the fact that certain

testimony is undenied, without reference to who may or may not be in a position to deny it; and, if that results in an inference unfavorable to the accused, he must accept the burden, because the choice to testify or not was wholly his. *State v. Ashby*, 77 Wn.2d at 38. The prosecutor does not commit misconduct when arguing the evidence does not support the defense theory. *State v. Pacheco*, 107 Wn.2d 59, 71, 726 P.2d 981 (1986). The mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense. *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009).

When uttering his challenged comments, the State's attorney responded to defense counsel's theory that Joshua Avalos received the cash not from the burglary, but from a legitimate source. The prosecution summarized the evidence supporting his argument that Avalos' recent influx of cash resulted from the Zhang residence burglary. The prosecution stated that the evidence presented no other explanation for the sudden infusion of cash. The prosecutor did not attempt thereby to shift the burden of proof to Avalos to show a legitimate source for the cash. The trial court instructed the jury that the prosecution still carries the burden of proof.

Cumulative Error

In the event that this court finds more than one error but that no one error by itself prejudiced him, Joshua Avalos contends cumulative error harmed him. Since we find no error, we do not address this additional contention.

21

Restitution

Finally, we address whether the facts supported an order of restitution in the sum of $1,000. Joshua Avalos notes that the jury found him guilty of possessing $1,000 in stolen cash and some stolen jewelry on August 31, 2015. The police recovered all of the stolen property covered by the conviction. Nonetheless, the sentencing court ordered Avalos to pay $1,000 in restitution because the State presented evidence that he possessed $1,900 on August 26. The State did not charge Avalos with the possession of stolen money found in his wallet on August 26.

The authority to impose restitution is wholly statutory. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). RCW 9A.20.030(1) provides in part:

> If a person has gained money or property or caused a victim to lose money or property through the commission of a crime, upon conviction thereof . . . the court . . . may order the defendant to pay an amount, fixed by the court, not to exceed double the amount of the defendant's gain or victim's loss from the commission of a crime. Such amount may be used to provide restitution to the victim at the order of the court.

This court reviews a restitution order for an abuse of discretion. *State v. Dedonado*, 99 Wn. App. 251, 255-56, 991 P.2d 1216 (2000). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d at 26 (1971).

Restitution is appropriate only if a causal connection exists between the defendant's offense and the victim's injuries for which restitution is sought. *State v.*

22

*Vinyard*, 50 Wn. App. 888, 893, 751 P.2d 339 (1988). A causal connection exists if "but for" the offense, the loss or damages to a victim's property would not have occurred. *State v. Tobin*, 161 Wn.2d 517, 525, 166 P.3d 1167 (2007). The trial court can only order restitution for losses or damage resulting from the precise offense charged. *State v. Miszak*, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993). Thus, if the loss or damage arises out of an earlier, uncharged crime, no causal relationship exists between the offense charged and the loss resulting from the earlier crime. *See State v. Hunotte*, 69 Wn. App. 670, 675, 851 P.2d 694 (1993).

The State of Washington proved that Joshua Avalos possessed $1,000, some stolen jewelry, and tax documents belonging to the Zhangs on August 31. Law enforcement recovered all of that property and cash. Other evidence at Avalos' trial included that he possessed $1,900 on August 26 and that he purchased a vehicle with $4,000 cash after August 26 but before his arrest on August 31. Nevertheless, the State did not convict or even charge Avalos of possessing stolen property on August 26 or on the date he purchased the Cadillac.

Any restitution imposed against Joshua Avalos must be based on a causal connection between the offense, for which the court convicted Avalos, and the injury the victim sustained. On January 10, 2017, the State convicted Avalos of possessing stolen property on August 31, 2015, yet law enforcement returned to the Zhangs' property all of the Zhangs' property Avalos possessed on August 31.

23

The State notes that the judge who presided over trial and sentenced Joshua Avalos was not the same judge who dismissed the additional charges of burglary, theft, and trafficking charges. The State suggests that the sentencing judge questioned the validity of the dismissal and this questioning may have influenced the restitution awarded. Nevertheless, the sentencing judge properly, expressly stated that he could not award restitution for the $4,000 spent to purchase the Cadillac since the State did not convict Avalos of possessing the $4,000.

The State next contends that the sentencing judge implicitly found the State proved by at least a preponderance of the evidence that the $2,000 Avalos possessed in Ephrata on August 26 came from the Zhang burglary and that, with only $1,000 recovered on August 31, Avalos should be liable to the victims for the remaining $1,000. Actually, Avalos possessed only $1,900 on August 26. Regardless of the amount or whether Avalos hid or spent half of the $1,900 by August 31, the State did not convict Avalos for possessing that cash not remaining in his possession on August 26. Therefore, the State's contention fails and the restitution award should be vacated.

Legal Financial Obligations

The sentencing court imposed a $100 DNA collection fee and a $200 case filing fee on Joshua Avalos. The law deemed these fees mandatory obligations at the time of sentencing. In 2018, the state legislature adopted House Bill 1783, which directed the trial court to impose the fees based on the offender's ability to pay. In *State v. Ramirez*,

24

191 Wn.2d 732, 426 P.3d 714 (2018), the Washington Supreme Court applied House Bill 1783 retroactively to cases already on appeal at the time of the effective date of the bill.

After filing his appeal brief, Joshua Avalos asked this reviewing court to also vacate the two legal financial obligations. Based on *Ramirez* and the State's concession, we direct vacation of the DNA collection fee and case filing fee.

## CONCLUSION

We affirm Joshua Avalos conviction for second degree possession of stolen property. We remand and direct the trial court to vacate the order of restitution, the order to pay the DNA collection fee, and the order to pay the case filing fee. Because of Joshua Avalos' continued indigency, we deny costs to the State on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, C.J.                                    Siddoway, J.

25