# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  55897-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TIMOTHY LYNN RASMUSSEN, SR. | |
| Appellant. | |

GLASGOW, C.J.—Timothy Rasmussen appeals his conviction and sentence for possession of heroin with the intent to deliver. He argues that he received ineffective assistance of counsel based on counsel's failure to object to the State's comments regarding the drug task force's investigation during opening argument, counsel's failure to object to evidence that Rasmussen did not have a job, and counsel's failure to object to the State's misstatements of the evidence during closing argument. Rasmussen also argues that remand is needed to impose a class C felony sentence because the to convict instruction did not identify heroin as the controlled substance at issue. Finally, Rasmussen argues we should remand for the trial court to remove simple possession of controlled substance convictions from his criminal history and to reduce the community custody term because he asserts the total length of confinement imposed exceeds the statutory maximum for his conviction.

We hold that Rasmussen did not receive ineffective assistance of counsel. We further hold that remand is not required based on the to convict instruction because reading the entire instruction in context, it required the jury to find that Rasmussen possessed heroin with intent to deliver. We further hold that remand is not required to remove simple possession of controlled substance convictions from his criminal history or to reduce the community custody term imposed. Accordingly, we affirm Rasmussen's conviction and sentence.

FACTS

Law enforcement executed a search warrant on Rasmussen's home. Inside Rasmussen's bedroom, officers found a small unlocked black safe in a dresser drawer. The safe contained heroin packed in baggies and pre-loaded syringes. They also found a glass bowl with heroin in it. A storage container holding multiple syringes and drug paraphernalia was found on top of the dresser. A digital scale and dozens of baggies were found on a bookshelf. Rasmussen's wife, Shelly, had a purse in the bedroom that contained $909 in cash. One bag of heroin collected at the scene weighed 8.24 grams.

The State charged Rasmussen with possession of heroin with the intent to deliver.[1]

In its opening statement, the State told the jury, "In order [to] prove the defendant guilty, the State has to prove a couple of things. That first, on or about January 27, 2021, the defendant possessed a controlled substance, that substance being heroin. The defendant possessed that heroin with the intent [to] deliver it to another person." Rep. of Proc. (RP) (May 25, 2021) at 42. The State also previewed for the jury the testimony they would likely hear during trial: "These

---

[1] The State initially also charged Rasmussen with possession of methamphetamine. That charge was dismissed pursuant to the Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

witnesses are going to testify that the Grays Harbor Drug Task Force opened an investigation into the delivery of heroin within Aberdeen and Hoquiam areas. You are going [to] hear that the focus of that investigation was eventually narrowed down to Timothy Rasmussen, the defendant, and his wife, Shelly Rasmussen." RP (May 25, 2021) at 43.

Detective Sergeant Darrin King, the supervisor for the task force, testified at trial. He explained some background about what the task force does and how it uses a drug tip line to get tips from people in the community about potential drug activity. King testified that once they receive a tip they sometimes begin surveillance and information gathering to build a case on suspects. King testified that the task force investigated Rasmussen beginning in 2020.

Detective Ryan Tully, a member of the drug task force, also testified at trial. He testified that he was familiar with the investigation into Rasmussen. He prepared the search warrant for the case, setup the execution of the warrant, led the briefing, and controlled the search of Rasmussen's home.

Shelly testified in Rasmussen's defense at trial. She testified that all of the drugs, paraphernalia, items in the safe, and cash were hers. Shelly testified that Rasmussen did not have access to the safe because she did not want him to know that she was using drugs. On cross-examination, the State asked Shelly, "Are you employed?" to which she responded, "No." RP (May 25, 2021) at 142. The State asked, "Is [Rasmussen] employed?" to which she also responded, "No." *Id.* at 142-43.

The trial court instructed the jury, in relevant part:

The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You

3

must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

. . . .

To convict the Defendant of the crime of Violation of the Uniform Controlled Substances Act—*Possession of Heroin* with Intent to Deliver, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about January 27, 2021, the Defendant possessed a controlled substance;

(2) That the defendant possessed *the* controlled substance with the intent to deliver *the* controlled substance; and

(3) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 9, 11 (emphasis added). The court also instructed the jury that heroin is a controlled substance, and heroin was the only controlled substance mentioned in the jury instructions.

During closing argument, the State argued that Rasmussen had dominion and control over the drugs found in his bedroom. It noted, "They were in his bedroom. The safe that they were in was unlocked. And on top of that, there was an ashtray on the floor with controlled substances in that, just out in the open." RP (May 25, 2021) at 151. Rasmussen objected, claiming the State was arguing facts not in evidence. The trial court commented "It's argument. The jury will disregard any facts presented that are not supported by the testimony." RP (May 25, 2021) at 151. The State resumed its argument that Rasmussen had access to the drugs:

4

Then again, the safe was open. He still had access. Yes, even considering the fact that that could have been her dresser drawer, it's a bedroom shared by a married couple. There were drawers in that that belonged to everybody. It wasn't just here, and there wasn't a lock on it. And the safe that was in there that was intended, or said to be intended to exclude him, was wide open.

RP (May 25, 2021) at 152.

In arguing that the evidence supported a finding that Rasmussen intended to sell the drugs, the State noted the small baggies and scale as well as the $909 cash found in the bedroom. "Shelly testified she doesn't have a job. He doesn't have a job. Where does the cash come from? And that's a lot of cash. $909 for somebody who doesn't have a job? All of these things together is what gives you the picture of, did the defendant intend to deliver this?" RP (May 25, 2021) at 154. The State also pointed out the amount of heroin that was found, referencing testimony that one of the baggies weighed 8.45 ounces and testimony that that amount was indicative of sales, not personal use. The testimony was actually that one bag that the lab tested contained 8.24 grams of heroin.

The jury found Rasmussen guilty "of the crime of Violation of the Uniform Controlled Substances Act—Possession of Heroin with Intent to Deliver as charged." CP at 16.

Rasmussen's criminal history listed on the judgment and sentence was extensive, including five prior convictions for possession of a controlled substance. The State's sentencing memorandum, however, did not include the prior possession convictions and calculated Rasmussen's offender score to be 6. The trial court also calculated Rasmussen's offender score to be 6. The trial court sentenced Rasmussen to 120 months confinement and 12 months of community custody. The State alerted the trial court that Rasmussen's community custody period could only be whatever time remains between when he was released and 120 months because the

conviction carried a 10 year statutory maximum. The trial court explained that the statutory "doubler" applied, and the maximum sentence for Rasmussen was actually 20 years.

Rasmussen appeals his conviction and sentence.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Rasmussen argues that he received ineffective assistance of counsel based on his counsel's failure to object to testimony that he was the subject of a drug task force investigation, to evidence of Rasmussen's unemployment, and to the State's misstatements of the evidence during closing argument. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Rasmussen must show both that defense counsel's performance was deficient and that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. *Id*. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end this court's inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

We strongly presume that defense counsel's performance was not deficient. *Emery*, 174 Wn.2d at 755. To overcome this presumption, Rasmussen must show "'the absence of legitimate

6

strategic or tactical reasons supporting the challenged conduct by counsel.'" *Emery*, 174 Wn.2d at 755 (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

A.     Drug Task Force Investigation Evidence

Rasmussen argues that his counsel rendered ineffective assistance by failing to object to testimony from Detectives King and Tully regarding the drug task force and its investigation into Rasmussen as a drug dealer. He argues that his counsel should have objected because the testimony constituted inadmissible hearsay, it was testimonial hearsay under the confrontation clause, and it constituted impermissible opinion on guilt. Because Rasmussen cannot show that counsel's decision not to object was not tactical, his claim fails.

Decisions on whether and when to object are "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763).

Here, defense counsel's decision not to object to the detectives' background testimony about the drug task force, how it operates, and that Rasmussen became subject to an investigation by the task force, is a clear example of trial tactics. The testimony Rasmussen takes issue with was elicited as the State laid a general groundwork for how the drug task force operates. The testimony did not include anything related to the content of tips from informants that led to the investigation into Rasmussen. Instead the testimony explained more generally that the task force has a system in place to receive tips from a wide variety of sources. In context, an objection likely would have emphasized the fact that the drug task force had reason to believe Rasmussen was selling drugs.

Opting not to object and permitting the State to quickly move on with its direct examination of the witnesses was a tactical decision that does not rise to the "egregious circumstances" under which the failure to object constitutes deficient performance.

Moreover, to the extent that Rasmussen argues counsel should have moved to exclude this testimony outside of the jury's presence, even if we were to agree, there was no prejudice. Although King testified generally about how the task force became aware of the targets of its investigations, he did not give any specific details about how Rasmussen came to their attention. And even though King said the task force targets mid to upper level dealers, he also said they sometimes "start at the bottom and have to work up." RP (May 25, 2021) at 49. King's testimony did not explain how the task force became aware of Rasmussen or how they viewed him, as a mid to upper level dealer or someone "at the bottom." *Id.* Had counsel gotten this testimony excluded, it is not reasonable to conclude that the result of trial would have been different. Rasmussen's claim fails.

B.      Unemployment Evidence

Rasmussen also argues that he received ineffective assistance of counsel based on his counsel's failure to object to evidence that Rasmussen was unemployed. He contends that the State improperly used this evidence to show Rasmussen's motive to commit crime. Rasmussen cannot show that an objection on this basis would have been sustained and his claim fails.

"Evidence of poverty is generally not admissible to show motive" or to create an inference that a defendant's financial status alone would suggest that he or she is more likely to commit a financially-motivated offense. *State v. Kennard*, 101 Wn. App. 533, 541, 6 P.3d 38 (2000). But evidence of a defendant's unemployment or poverty status is not per se prejudicial.

For example, in *State v. Jones*, the trial court admitted documents from the Department of Employment Security that showed Jones had no reported income and did not apply for unemployment compensation for a two year period during which at least one of the alleged cocaine sales occurred. 93 Wn. App. 166, 173, 968 P.2d 888 (1998). The trial court found the evidence to be probative with regard to whether or not Jones was selling drugs. *Id*. The trial court reasoned that Jones was "'not a person who is simply unemployed or not working, but a person who is unemployed who has a large amount of cash in his pocket and is accused of a crime for which profit is certainly a motive for a commission of such an act.'" *Id*.

On appeal, we found that the trial court engaged in proper balancing and concluded that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. *Id*. at 176. Had Jones been found "with no money after the alleged offense, or with an insignificant sum, the admission of evidence of Jones's financial situation would have been error." *Id*.

This case is similar to *Jones*. Here, the State did not introduce evidence of Rasmussen's unemployment as evidence that poverty is a motive to deal drugs. Rather, it was introduced to explain the presence of a large sum of cash and to rebut Shelly's contention that the heroin found in the bedroom was for her personal use. The relevance and probative value of finding a large sum of money alongside a significant amount of heroin, baggies, and a scale to prove possession of heroin with intent to deliver is indisputable. Introducing evidence that neither Shelly nor Rasmussen was employed at the time rebutted a potential argument that the large amount of cash came from a lawful source.

Viewing the State's closing argument in context is clarifying. The State argued, "Shelly testified she doesn't have a job. He doesn't have a job. *Where does the cash come from? And that's a lot of cash. $909 for somebody who doesn't have a job?*" RP at 154 (emphasis added). The State clearly sought to tie the cash to Rasmussen selling drugs; it did not improperly argue that Rasmussen would be more likely to commit a crime because of his poverty.

Given the relevance and probative value of this brief testimony and reference to it during closing argument, Rasmussen fails to show that any objection would have been sustained. Accordingly, his claim that counsel rendered ineffective assistance on this ground fails.

C.      State's Misstatements of Evidence

Rasmussen also argues that his trial counsel rendered ineffective assistance for not objecting to the State's misstatements of the evidence during closing arguments. Specifically, Rasmussen takes issue with the State's comments that the safe was open and that one bag of heroin weighed 8.45 ounces instead of 8.24 grams. Rasmussen cannot show that he was prejudiced by counsel's failure to object to these comments, and his claim fails.

While the testimony does not establish that the safe was open such that its door was ajar, it is undisputed that the safe was unlocked and accessible by anyone in the house. The State's comments that the safe was "open" was not overly misleading in this context. And while the difference between 8.24 grams and 8.45 ounces is significant, the jury was properly instructed that comments and argument from legal counsel did not amount to evidence. Indeed, Rasmussen did object on the basis of facts not in evidence once during closing argument and the trial court reminded the jury to disregard any facts presented by counsel that are not supported by the testimony. We presume juries follow the instructions provided them by the court. *State v. Keend*,

140 Wn. App. 858, 868, 166 P.3d 1268 (2007). Rasmussen's ineffective assistance of counsel claim fails.

## II. TO CONVICT INSTRUCTION

When the identity of the controlled substance increases the maximum sentence that the defendant may face upon conviction, the identity is an essential element. *State v. Clark-El*, 196 Wn. App. 614, 618, 384 P.3d 627 (2016); *State v. Sibert*, 168 Wn.2d 306, 312, 230 P.3d 142 (2010) (plurality). Rasmussen was charged under RCW 69.50.401(2)(a), with unlawful delivery of a controlled substance (heroin). Delivery of heroin is a class B felony with a maximum sentence of 10 years. RCW 69.50.401(2)(a). In contrast, delivery of "controlled substances" is a class C felony with a maximum sentence of 5 years. RCW 69.50.401(2)(c); RCW 9A.20.021. Thus, the identity of the substance that the State alleged Rasmussen delivered, heroin, was an essential element of the crime charged because it exposed him to greater punishment. Rasmussen argues that remand for resentencing is necessary because the to convict instruction did not specify the controlled substance, an essential element, and therefore the guilty verdict only supports a conviction of a class C felony. We disagree.

"'We review the adequacy of a challenged to convict jury instruction de novo.'" *State v. Gonzalez*, 2 Wn. App. 2d 96, 105, 408 P.3d 743 (2018) (internal quotation marks omitted) (quoting *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005)). A "to convict" instruction must contain all the essential elements of the charged crime. *Clark-El*, 196 Wn. App. at 618. A jury instruction is erroneous if it relieves the State of its burden to prove every element of the crime. *State v. DeRyke*, 149 Wn.2d 906, 912, 73 P.3d 1000 (2003).

In *Clark-El*, the defendant was tried on a charge of delivery of methamphetamine, a class B felony. *Clark-El*, 196 Wn. App. at 617. The to convict instruction did not identify the controlled substance. *Id*. at 619. The jury found Clark-El guilty of the crime of delivery of a controlled substance. *Id*. at 618-19. The court sentenced him for the offense of delivery of methamphetamine, a class B felony. *Id*. at 618. On appeal, the court of appeals considered whether the faulty to convict instruction required reversal of Clark-El's conviction and sentence. *Id*. at 618.

As to Clark-El's sentence, we held that the jury's verdict did not authorize the sentence imposed because "the only finding stated in the verdict was that Clark-El was guilty of the crime of delivery of 'a controlled substance.'" *Id*. at 624. Because delivery of an unspecified controlled substance is a class C felony, the court held that the sentencing court erred in imposing a sentence for a class B felony. *Id*.

In *State v. Gonzalez*, 2 Wn. App. 2d 96 (2018), the State charged the defendant with unlawful possession of a controlled substance, methamphetamine, under former RCW 69.50.4013 (2015). Although the forensic examination of the controlled substance revealed both methamphetamine and cocaine, the amended information mentioned only possession of methamphetamine and not cocaine. The to convict instruction declared that the State must prove "the defendant possessed a *controlled substance*." *Gonzalez*, 2 Wn. App. 2d at 104. The to convict instruction omitted the type of controlled substance. On appeal, we held that because the jury's verdict did not specify the controlled substance Gonzalez unlawfully possessed, the only authorized sentence was the lowest possible sentence for unlawful possession of a controlled substance.

Unlike in *Clark-El*, or *Gonzalez*, here, the to convict instruction's prefatory language clearly identified heroin as the controlled substance at issue. In those cases, the specific controlled substance at issue was not identified anywhere in the to convict instruction. *See Clark-El*, 196 Wn. App. at 619 and *Gonzalez*, 2 Wn. App.2d at 104 (to convict instructions stating that "defendant possessed a controlled substance.").

That the jury understood the to convict instruction to require a finding that Rasmussen specifically possessed heroin with the intent to deliver as opposed to a controlled substance, generally, is further evidenced by the verdict form. The verdict form expressly included "possession of heroin." This fact further distinguishes this case from *Clark-El* where the verdict was only for delivery of "a controlled substance." 196 Wn. App. at 618; *see also State v. Rivera-Zamora*, 7 Wn. App. 2d 824, 829, 435 P.3d 844 (2019) (distinguishing case from *Clark-El* and affirming defendant's sentence where verdict form stated unequivocally that it found defendant guilty of unlawful possession of a controlled substance with intent to deliver—methamphetamine, even though the to convict instruction omitted the word "methamphetamine.").

Under these circumstances, and reading the entire to convict instruction in context, we hold that the to convict instruction sufficiently required the jury to find that Rasmussen possessed "the" controlled substance, heroin. And reading the plain language of the verdict, the jury *did* find Rasmussen possessed *heroin* with intent to deliver and not some other controlled substance. Consequently, there is no error in the to convict jury instruction that merits remanding for resentencing.

III. *BLAKE* CONVICTIONS

Rasmussen also argues that resentencing is required to remove the possession of a controlled substance convictions from his criminal history following *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021).

In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, former RCW 69.50.4013(1), violates state and federal due process clauses and is therefore void. 197 Wn.2d at 195. A conviction based on an unconstitutional statute cannot be considered in calculating the offender score. *See State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986).

Here, there is no evidence to suggest that the trial court considered Rasmussen's prior drug possession convictions in calculating his offender score or imposing his sentence. The State provided Rasmussen's criminal history in its Statement of Prosecuting Attorney. That criminal history did not include Rasmussen's prior convictions for possession of a controlled substance. The listed felony conditions included first degree escape, first degree possession of stolen property, possession of heroin with intent to deliver, first degree trafficking in stolen property, and theft of a motor vehicle. Based on those prior convictions and a point based on the fact that Rasmussen committed his current offense while on community custody, the State calculated Rasmussen's offender score to be 6.

At sentencing, the trial court noted that the Statement of Prosecutor was correct, confirmed that Rasmussen stipulated that the criminal history was accurate, and calculated the offender score to be 6. For some reason, the criminal history listed on Rasmussen's judgment and sentence included his prior drug possession convictions. However, nothing in the record suggests that the

trial court considered those convictions in calculating the offender score or imposing its sentence. Although Rasmussen points to the trial court's recognition that his prior criminal history was "long" and "prolific," these statements appear to be a response to Rasmussen's request for a prison based drug offender sentencing alternative, which the trial court denied and Rasmussen does not appeal. See RP (June 4, 2021) at 6. To the extent the prolific nature of Rasmussen's criminal history could have affected the length of the sentence imposed, Rasmussen's prior controlled substance possession convictions were 4 of 37 prior offenses. Even subtracting the 4 controlled substance possession convictions, Rasmussen's criminal history is still "long" and "prolific." See RP (June 4, 2021) at 6; CP at 19-21. Accordingly, resentencing is not required.

IV. STATUTORY MAXIMUM SENTENCE

Finally, Rasmussen argues that remand to reduce his community custody term is necessary because the total length of his confinement exceeds the 10 year maximum sentence for his conviction. We disagree because the trial court doubled the maximum sentence as authorized by RCW 69.50.408(1).

Possession of heroin with intent to deliver is a class B felony with a statutory maximum sentence of 10 years imprisonment. RCW 69.50.401(2)(a). Rasmussen argues that his total sentence of 132 months was unauthorized based on that statutory maximum.

However, "[a]ny person convicted of a second or subsequent offense under [chapter 69.50 RCW] may be imprisoned for a term up to twice the term otherwise authorized." RCW 69.50.408(1). An offense is considered a second or subsequent offense if the defendant was ever previously convicted under chapter 69.50 RCW "or under any statute of the United States or of any state relating to narcotic drugs, cannabis, depressant, stimulant, or hallucinogenic drugs."

RCW 69.50.408(2). The Washington Supreme Court recently held that RCW 69.50.408 automatically doubles the maximum sentence. *State v. Cyr*, 195 Wn.2d 492, 504, 461 P.3d 360 (2020).

Here, Rasmussen had multiple prior felony convictions under chapter 69.50 RCW. Therefore, under the plain language of RCW 69.50.408(1) the statutory maximum sentence automatically doubled from 10 years to 20 years. Rasmussen asserts that RCW 9.94A.505 and .701(10) require his community custody term to be reduced to bring the sentence within the statutory maximum under RCW 9A.20 generally, and RCW 9A.20.021 in particular. Thus, Rasmussen contends, these statutes do not allow the community custody provision to extend his entire sentence beyond the 10 year statutory maximum.

But Rasmussen's proposed statutory interpretation ignores the plain language of RCW 9A.20.021, which sets the maximum sentence for a class B felony at 10 years "unless a different maximum sentence for a classified felony is specifically established by a statute of this state." RCW 69.50.408(1) establishes a different statutory maximum when it applies to double the otherwise applicable maximum. We read statutes in harmony wherever possible, and this reading harmonizes the sentencing statutes recited above. Thus, we decline to adopt Rasmussen's interpretation.

Rasmussen did not object when the trial court noted the "doubler" at sentencing. The trial court imposed a total sentence of 132 months. Although that sentence exceeded the "normal" 10 year statutory maximum for possession of heroin with intent to deliver, it was well within the doubled statutory maximum of 20 years.

No. 55897-1-II

We affirm Rasmussen's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Veljacic, J.

Price, J.